431 A.2d 326

**FJS ELECTRONICS, INC. t/a Multi-Teck**

v.

**The FIDELITY BANK, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 4, 1980.

Filed June 19, 1981.

Karen Lee Turner, Philadelphia, for appellant.

Robert A. Swift, Philadelphia, for appellee.

Before SPAETH, BROSKY and HOFFMAN, JJ.

BROSKY, Judge:

FJS Electronics, Inc., appellee, brought an action to recover the amount of a check drawn on appellant bank which appellant paid after appellee had requested payment be stopped. The central issue for our determination is whether a bank had a reasonable opportunity to stop payment on a check in the sum of $1,844.98 when the amount given by the customer was $1,844.48, hence, inaccurate. The court below held that an error of $.50 does not deprive the bank of a reasonable opportunity to stop the check. We affirm.

On February 27, 1976, appellee, FJS Electronics, Inc., trading as Multi-Teck (hereinafter Multi-Teck), drew a check in the amount of $1,844.98 on appellant, The Fidelity Bank (hereinafter Fidelity). The number of the check was 896 and the payee was Multilayer Computer Circuits. On March 9, 1976, Mr. Frank Suttill, president of Multi-Teck, called Fidelity on the telephone and requested payment on check number 896 be stopped. Mrs. Roanna M. Sanders took the stop payment order. The amount given by Suttill was $1,844.48; otherwise, the information he provided was essentially correct.[1] A confirmation notice was subsequently sent

1. The Court below notes that the subsequent written confirmation notice denominated the payee of the check as Multilator, rather than Multilayer, Computer Circuits. On page 2 of its opinion, in footnote

to Multi-Teck, reciting the inaccurate amount, and Multi-Teck confirmed all the information which it contained. The confirmation notice also contained the request, "PLEASE ENSURE AMOUNT IS CORRECT." (The entire notice was in block letters.)

The parties stipulated the following facts:

6. In March 1976, the Bank used a computer to pull checks on which stop payment request had been made. The computer keyed on the amount of the check which was typed in computer digits by the depository Bank on the bottom of each check.

7. The Bank, except when requested by a customer, did not pre-print nor post-print the number of the check in computer digits on the bottom of the check. Some banks in Philadelphia and other cities did pre-print the number of the check.

8. The Bank's computer was programmed to read three sets of computer digits called "fields" on the bottom of each check: the federal reserve number of the bank, the account number and the amount of the check.

9. The Bank's computer program was designed so that all digits of the amount of the stop payment request had to agree with the computer digits of the amount on the bottom of the check before the check was pulled.

10. The Bank's computer was not programmed to pull checks where there was a discrepancy in a digit of the amount of the stop payment request and the computer digits of the amount on the bottom of the check nor was it designed for stop payment purposes to read the number of the check.

11. The Bank received approximately 100 to 150 stop payment requests a day during 1976.

12. In taking stop payment orders, the Bank tells the customer that every bit of information must be accurate. Mr. Suttill was told that on March 9, 1976.

2, the court stated that this "variance would not appear to have meaningful bearing on the principle issue in dispute." We assume, without deciding, that this is correct, and note that this issue is not before us, since the parties have not raised it.

13. The Bank did not tell Mr. Suttill, nor did he request, information as to the procedure whereby the computer pulls checks on which stop payments have been issued.

14. If the computer pulls more than one check where the amount field matches that of the stop payment order, then those checks are compared manually with the stop payment request.

On March 15, 1976, check No. 896 was paid by Fidelity, and Multi-Teck's account was charged. The court below found that this charge resulted in a loss of $1,844.98 to Multi-Teck.

██ We must decide whether the court below was correct in holding that a customer's error in the amount of a check in a stop payment request does not relieve the bank of liability.

Section 4–403(1) of the Uniform Commercial Code[2] addresses the problem of stop payment orders:

A customer may by order to his bank stop payment of any item payable for his account but the order must be received at such time and in such manner as to afford the bank a reasonable opportunity to act on it . . .

It is clear that the order here was timely received. The court below determined that even though it contained an error, the order was given in such manner as to give the bank a reasonable opportunity to act. Fidelity, in essence, asserts that the section should be read to require compliance with the procedures of a particular bank, regardless of what they are and regardless of whether the customer has been made aware of them. Fidelity argues that since its technique for ascertaining whether payment had been stopped required absolute accuracy as to the amount of a stopped check, this section would require absolute precision in order for the notice to be reasonable. Such a narrow view is not consistent with the intent being § 4–403, expressed in Comment 2 following the section:

2. 13 Pa.C.S.A. § 4403(a).

The position taken by this section is that stopping payment is a service which depositors expect and are entitled to receive from banks notwithstanding its difficulty, inconvenience and expense. The inevitable occasional losses through failure to stop should be borne by the banks as a cost of the business of banking.

Fidelity does not contend that it could not have used a technique which required less precision in the stop payment order. It does not contend that it could not have found the check had it used a more thorough system. It merely asserts that since it chose a system which searched only by amount, notice is not reasonable unless it conforms to the requirements of this system.

Fidelity made a choice when it elected to employ a technique which searched for stopped checks by amount alone. It evidently found benefits to this technique which outweighed the risk that an item might be inaccurately described in a stop order. This is precisely the type of inevitable loss which was contemplated by the code drafters and addressed by the comment quoted above. The focus of § 4–403 is the service which may be expected by the *customer*, and a customer may expect a check to be stopped after the bank is given reasonable notice. A bank's decision to reduce operating costs by using a system which increases the risk that checks as to which there is an outstanding stop payment order will be paid invites liability when such items are paid.

An error of fifty cents in the amount of a stop payment order does not deprive the bank of a reasonable opportunity to act on the order. *See, Elsie Rodriquez Fashions, Inc. v. Chase Manhattan Bank*, 23 U.C.C. Reporting Service 133 (New York Supreme Ct., Trial Division, 1978), holding a bank is liable when a check is paid over a stop order bearing an amount which is in error by ten cents; *Rimberg v. Union Trust Co. of the District of Columbia*, 12 U.C.C. Reporting Service 527 (D.C.Superior Ct. 1973), finding a bank liable for failing to stop a check over an order inaccurate as to amount, where the bank had notice that the amount might be incorrect. *But see* the discussion of necessary informa-

tion in Hawkland, *Stop Payment Orders Under the Uniform Commercial Code*, 75 Commercial Law Journal 53, 58 (1970), which would require conformity to the system employed by a particular bank.

Appellant further contends that appellee should bear the loss since it failed to ascertain whether check No. 896 had been paid before a replacement check had been issued. While 13 Pa.C.S.A. § 4403(c) places the burden of proof of loss on the customer, the purpose behind this requirement is to prevent unjust enrichment (Comment 8 to § 4–403), and not to impose any additional burden on the customer beyond a showing of loss and payment over a binding stop order. The fact that payment occurred over a binding stop order was addressed above. Appellee's proof that a replacement check was issued and paid satisfied the trial court that a loss had been suffered due to Fidelity's payment of check No. 896. Appellant has made no argument that this loss did not occur.

The order of the court below is affirmed.