Joan L. **PARR**, Appellant,

v.

**SECURITY NATIONAL BANK,**
Appellee.

No. 59733.

Court of Appeals of Oklahoma,
Division No. 1.

March 13, 1984.

Released for Publication by Order of Court of Appeals April 13, 1984.

Pray, Walker, Jackman, Williamson & Marlar by David Kumpe, Tulsa, for appellant.

Jim Shofner, Tulsa, for appellee.

REYNOLDS, Judge.

We are called upon to decide whether Security National Bank had a reasonable opportunity to stop payment on a check when the description received was exact in all respects except for a single digit error in the check amount. This issue has not been decided by an Oklahoma court.

Parr wrote check number 949 to Champlin Oil. She dated and mailed it September 14, 1981. The amount of the check was $972.96. On September 15, 1981, Parr ordered payment stopped by telephone. Parr gave the bank her account number, the check number, the date, the payee and the amount of the check. A 50 cent error was made in identifying the amount of the check. Parr went to the bank on September 16th or 17th and executed a written stop order dated September 15, 1981. The written stop order was also in error. Security National paid check number 949 on September 17, 1981.

Parr brought suit against Security National seeking recovery for the amount of the check, 12% interest on that amount, reasonable attorney's fees and costs. Security National defended by showing their computers were programed to stop payment only if the reported amount of the check were correct. They argued Parr's 50 cent error relieved them of liability. Timeliness of notice was not at issue.

Section 4–403(1) of the Uniform Commercial Code, 12A O.S.1981 § 4–403(1), contains the applicable law on stop payment orders:

> A customer may by order to his bank stop payment of any item payable for his account but the order must be received at such time and in such manner as to afford the bank a reasonable opportunity to act on it prior to any action by the bank with respect to the item described in Section 4–303.

It is appropriate to examine the purpose of this section before construing it.[1] The policy underlying § 4–403 is found in Comment 2 following the section:

> The position taken by this section is that stopping payment is a service which depositors expect and are entitled to receive from banks notwithstanding its difficulty, inconvenience and expense. The inevitable occasional losses through failure to stop should be borne by the banks as a cost of the business of banking.

Security National contends that whether a stop payment order has been received "in such manner as to afford the bank a reasonable opportunity to act" should be determined *after* examining how the defendant bank handles stop orders. This interpretation has found favor among highly respected legal authorities,[2] but not among the majority of courts that have addressed this issue.[3]

---

**1.** 12A O.S.1981 § 1–102(1): "This Act shall be liberally construed and applied to promote its underlying purposes and policies." Comment 1 following § 1–102 states:

> The Act should be construed in accordance with its underlying purposes and policies. The text of each section should be read in the light of the purpose and policy of the rule or principle in question, as also of the Act as a whole, and the application of the language should be construed narrowly or broadly, as the case may be, in conformity with the purposes and policies involved.

**2.** White & Summers, Handbook of the Law Under the Uniform Commercial Code § 17–5, at 679–80 (2nd ed. 1980); Hawkland, Stop Payment Orders Under the Uniform Commercial Code, 3 UCC L.J. 103, 117–18 (1970); Roberts and Mann, A Proposal for Regulating Banks'

Use of Exculpatory Clauses in Stop Payment Orders, 84 Com.L.J. 183, 187–88 (1979).

**3.** *See e.g., Sherrill v. Frank Morris Pontiac-Buick-GMC, Inc.,* 366 So.2d 251 (Ala.1979); *Delano v. Putnam Trust Co.,* 33 UCC Rep. 635 (Conn.Super.Ct.1981); *Pokras v. National Bank of North America,* 30 UCC Rep. 1089 (N.Y.App.Term. 1981); *Elsie Rodriguez Fashions, Inc. v. Chase Manhattan Bank,* 23 UCC Rep. 133 (N.Y.Sup.Ct. 1978); *Thomas v. Marine Midland Tinkers Nat'l Bank,* 86 Misc.2d 284, 381 N.Y.S.2d 797 (N.Y. City Civ.Ct.1976); *FJS Electronics, Inc. v. Fidelity Bank,* 288 Pa.Super. 138, 431 A.2d 326 (1981). *But see, Midgen v. Chase Manhattan Bank, N.A.,* 32 UCC Rep. 937 (N.Y.Civ.Ct.1981) (finding *for* customer on grounds that bank was negligent in failing to program its computer to avoid payment where reported amount of check was in

Both groups acknowledge § 4–403(1) has not changed the common law rule that a stop payment order must identify the check with "reasonable accuracy." [4] It is from this premise that courts have determined whether the description is reasonably accurate without consideration of the defendant/bank's computer program. In *Elsie Rodriguez Fashions, Inc. v. Chase Manhattan Bank*, 23 UCC Rep. 133 (N.Y. Sup.Ct.1978), the customer gave the bank the correct payee, check number and date but made a 10 cent error in the amount of the check. The court determined the check had been described with sufficient accuracy to allow the bank to stop payment. The opinion makes no mention of the bank's computer program. In accord with this approach on similar facts are the New York cases of *Pokras v. National Bank of North America*, 30 UCC Rep. 1089 (N.Y. App.Term.1981), and *Thomas v. Marine Midland Tinkers National Bank*, 86 Misc.2d 284, 381 N.Y.S.2d 797 (N.Y.City Civ.Ct.1976). A different result was reached by a New York court where the customer was told by the bank the stop order would not be effective unless she provided the *exact* amount of the check. *Poullier v. Nacua Motors, Inc.*, 108 Misc.2d 913, 439 N.Y.S.2d 85 (N.Y.Sup. 1981). Security National does not contend they gave notice to Parr that any discrepancy in the check amount would prevent compliance with her stop payment order.

In *Delano v. Putnam Trust Co.*, 33 UCC Rep. 635 (Conn.Super.Ct.1981), a single digit error in the amount of $100.00 did not prevent recovery where customer supplied bank with the correct check number, date, payee, and account number of the check. The bank's computer program required an exact match of check amount before it would stop payment. Court held bank had received sufficient information to allow it a "reasonable opportunity to act" on the stop

payment order. Court stated the bank had a duty to inform its customer of the need for precision in reporting the amount before it could rely on customer's error to relieve it of liability.

The Supreme Court of Alabama denied customer's recovery in *Sherrill v. Frank Morris Pontiac-Buick-GMC, Inc.*, 366 So.2d 251 (Ala.1979). Customer gave bank three descriptive elements of the check: check amount, payee and date. The check was not numbered. Two of the three pieces of information were incorrect. Court determined the check was not described with reasonable accuracy, therefore the bank was not afforded a "reasonable opportunity to act" on the stop payment order.

In *FJS Electronics, Inc. v. Fidelity Bank*, 288 Pa.Super. 138, 431 A.2d 326 (1981), Court allowed customer to prevail even though its 50 cent error in check amount prevented bank's computer from acting on stop payment order. The bank asserted § 4–403 "should be read to require compliance with the procedures of a particular bank, regardless of what they are and regardless of whether the customer has been made aware of them." *Id.* 431 A.2d at 328. Court determined that the drafter's policy stated in Comment 2 to § 4–403 precluded such an interpretation. They reasoned:

Fidelity made a choice when it elected to employ a technique which searched for stopped checks by amount alone. It evidently found benefits to this technique which outweighed the risk that an item might be inaccurately described in a stop order. This is precisely the type of inevitable loss which was contemplated by the code drafters and addressed by the comment quoted above. The focus of § 4–403 is the service which may be expected by the *customer*, and a customer may expect a check to be stopped after the

---

error by only ⅔ of one percent of actual check amount).

**4.** *See* notes 1 and 2, *supra*. *See also Capital Bank v. Schuler*, 421 So.2d 633, 635 (Fla.App. 1982). This is not so in states like California

and Florida whose legislatures added to § 4–403(1) the requirement that the item be described "with certainty". *See* Cal.Com.Code § 4–403(1) (West 1964); Fla.Stat. § 674.4–403(1) (1966); *See also* D.C.Code § 28:4–403(1) (1967).

bank is given reasonable notice. A bank's decision to reduce operating costs by using a system which increases the risk that checks as to which there is an outstanding stop payment order will be paid invites liability when such items are paid.

We find this analysis, as well as that in *Delano, supra,* persuasive. We hold Parr described her check with reasonable accuracy, and Security National had a reasonable opportunity to act on the stop payment order.

We are aware of the burden this may place on Oklahoma banks. However, the industry has two alternatives to avoid liability if banking procedures necessitate an exact description of an item: (1) notify the customer at the time a stop order is given,[5] or (2) seek a legislative amendment to § 4–403.[6]

We recognize Parr received the benefit of having her debt paid to Champlin Oil and will recover from Security National for failure to stop payment. To avoid this possibility of unjust enrichment, § 4–407(b) subrogates the payor bank [Security National] to the rights of the payee [Champlin] against the maker [Parr]. In such a suit, an award of attorney's fees and costs to Security National would be proper under 12 O.S.1981 § 936, as Champlin would have been suing Parr on an open account if Security National had stopped payment on the check.

Trial court is REVERSED and this cause REMANDED for award of $972.96 plus reasonable attorney's fees and costs consistent with this opinion.

**REVERSED AND REMANDED.**

YOUNG, P.J., and ROBINSON, J. concur.

---

5. *See Delano v. Putnam Trust Co., supra; Poullier v. Nacua Motors, Inc., supra.*

6. *See* note 4, *supra.*