207 N.J. Super. 327 (1985)
504 A.2d 148
STAFF SERVICE ASSOCIATES, INC., A NEW JERSEY CORPORATION, PLAINTIFF,
v.
MIDLANTIC NATIONAL BANK, A CORPORATION ORGANIZED UNDER THE BANKING LAWS OF THE UNITED STATES, DEFENDANT.
Superior Court of New Jersey, Law Division Essex County.
Decided September 30, 1985.
*328 Sydney M. Dornbush for plaintiff (Siroto & Siroto, attorneys).
*329 Charles A. Strenk for defendant (Clemente, Strenk & Kiernan, attorneys).
ROSEMARY HIGGINS CASS, J.S.C.
This summary judgment motion raises the issue, not previously decided in New Jersey, of what manner of notice to a bank affords it a reasonable opportunity to stop payment on a check within the intendment of N.J.S.A. 12A:4-403(1).
The pertinent facts are not in dispute. Plaintiff Staff Services Associates, Inc. (hereinafter Staff Service) is a corporation which maintains a checking account with defendant Midlantic National Bank (hereinafter Midlantic). On July 2, 1982, Staff Service's representative, Raymond A. Nelson, issued a check drawn on Midlantic, payable to Lynn A. Gross for the sum of $4,117.12. Thereafter, on July 7, 1982, John J. Tracy, the president of Staff Service, executed a stop payment order to Midlantic and incorrectly wrote the amount of the check as $4,117.72, an error of one digit. Tracy acknowledged that he read the statement at the bottom of the stop payment order which provides as follows:
IMPORTANT: The information on this Stop Payment Order must be correct, including the exact amount of the check to the penny, or the Bank will not be able to stop payment and this Stop Payment Order will be void.
As a result of the incorrect information supplied by Tracy, the wrong amount was programmed into Midlantic's computer and when presented for payment the check was paid and the bank charged it to Staff Service's account. Thereafter, plaintiff brought this action for wrongful payment of the check in violation of the stop payment order.
Midlantic contends that since Staff Service supplied the bank with an incorrect check amount, despite having been apprised of the necessity for precision in the stop payment order, it was not afforded a reasonable opportunity to act upon Staff Service's request to stop payment of the check as required by § 4-403(1) of the Uniform Commercial Code, N.J.S.A. 12A:4-403(1).
*330 Staff Service claims that numerous questions of fact exist, including: whether the condition imprinted on the stop payment order is arbitrary and unreasonable; whether the imposition of such condition is contrary to public policy in light of the unequal bargaining position between the bank and its customers; whether the bank should reasonably be obligated to inform its customers that a computerized system is utilized to stop payment of checks and whether Staff Service's representative did, in fact, reasonably describe the check when he correctly supplied the date, the number of the check, the account number, the payee's name and the actual amount, which varied only by 60 cents.
Section 4-403(1) of the Uniform Commercial Code, N.J.S.A. 12A:4-403(1) provides:
A customer may by order to his bank stop payment of any item payable for his account but the order must be received at such time and in such manner as to afford the bank a reasonable opportunity to act on it prior to any action by the bank with respect to the item described in 12A:4-303. [emphasis supplied]
This provision codifies the common law right of a depositor to order payment of a check stopped.
There are no reported decisions in this State which have dealt with the issue of what constitutes a bank's "reasonable opportunity to act" pursuant to § 4-403(1) of the code, where the customer requests stop payment of a check. However, decisions of courts in other jurisdictions are instructive.
One line of cases has looked at the sufficiency of the customer's notice to the bank and found that even though there might be a discrepancy in the check amount or the check number, nevertheless the information supplied was sufficient to permit the bank to reasonably comply with the stop order.
In Pokras v. National Bank of North America, 30 U.C.C. Rep.Serv. (Callaghan) 1089 (N.Y. App. Div. 1981), plaintiff accurately described the date and number of the check as well as the payee's name in the stop payment order. Under these circumstances, the court found that a two cent disparity between the amount of the check and the amount set forth in the *331 stop order was trivial and insignificant. The stop payment order provided the bank with sufficient information to comply therewith. Id. at 1090; See also Elsie Rodriguez Fashions, Inc. v. Chase Manhattan Bank, 23 UCC Rep.Serv. (Callaghan) 133 (N.Y. Sup. Ct. 1978) (a ten cent error in check insignificant where other items described accurately); Thomas v. Marine Midland Tinkers National Bank, 86 Misc.2d 284, 381 N.Y.S.2d 797 (N.Y. Civ. Ct. 1976) (a single digit mistake in the check number deemed trivial); but see Sherril v. Frank Morris Pontiac-Buick-GMC, Inc., 366 So.2d 251 (Ala.Sup.Ct. 1978).
Another line of cases holds that where the bank fails to notify its customer that certain information (e.g., the check number) must be supplied accurately to stop payment of a check, the bank may be liable despite the customer's error on the stop payment order.
In Parr v. Security National Bank, 680 P.2d 648 (Okla. Ct. App. 1984), the stop payment order executed by plaintiff accurately recorded her account number, the number and date of the check and the payee's name but there was a single digit error in the amount of the check. After a thorough analysis of numerous cases decided in other jurisdictions, the court found that plaintiff had described her check with reasonable accuracy and the bank had a reasonable opportunity to act on the stop payment order. Id. at 651. Although the court was aware that its decision placed a burden on the banking industry, it indicated that liability could be avoided if a bank notifies the customer at the time a stop order is given of the necessity for an exact description of an item or if a legislative amendment to § 4:403 were passed. Ibid.
Similarly, in Delano v. Putnam Trust Co., 33 UCC Rep.Serv. (Callaghan) 635 (Conn.Super.Ct. 1981), plaintiff accurately provided a detailed description in the stop payment order except for a single digit mistake in the amount of the check. The court noted that even though plaintiff's error amounted to $100, it was de minimis because plaintiff provided four other accurate *332 descriptive factors along with the incorrect figure. The court noted in part:
The advent of the computer in processing orders, however, has changed the procedure from a consideration of all the check characteristics noted on the stop payment form to the exclusive reliance on one or two factors of information. Courts have held that banks have a duty in that situation to describe their procedure while a depositor is completing the form emphasizing the elements that must be precise if a stop payment order is to be effective. A District of Columbia bank was liable for payment over a stop order because its teller failed to inform the depositor that the bank's computerized system required the exact amount of the check to effectuate a stop order. Rimberg v. Union Trust, 12 UCC Rep 527 (DC Super Ct. 1973). [Id. at 638]
In light of the fact that defendant bank failed to inform plaintiff "of the need for precision in reporting the amount of the check," the court found that the bank was given sufficient information to act on the stop payment order. Id. at 639.
Only two courts have dealt with the bank's obligation pursuant to the Uniform Commercial Code where the bank notifies the customer that certain information must be accurately described in the stop payment order and the customer errs in providing such information. In Poullier v. Nacua Motors, Inc., 108 Misc.2d 913, 439 N.Y.S.2d 85 (N.Y. Sup. Ct. 1981), plaintiff executed a stop payment order which contained a one digit error in the amount of the check. Applying § 4:403(1) of the Uniform Commercial Code, the court granted summary judgment in favor of defendant bank based upon the undisputed fact that plaintiff had been advised of the necessity for providing the exact dollar amount of the check on the stop payment order. Id. at 913, 439 N.Y.S.2d 85.
To the contrary is FJS Electronics, Inc. v. Fidelity Bank, 288 Pa.Super. 138, 431 A.2d 326 (1981). There the president of plaintiff, Frank Suttill, telephoned defendant bank to stop payment on a check which had been drawn on defendant. In taking the stop order, defendant's representative informed Suttill that "every bit of information must be accurate." Id. at 140, 431 A.2d 326. Nevertheless, Suttill misstated the check amount as $1,844.48 rather than $1,844.98. Thereafter, a confirmation notice reciting the inaccurate amount was sent to plaintiff, and *333 plaintiff confirmed all the information in the notice. The confirmation notice also contained the following language in block letters: "PLEASE INSURE AMOUNT IS CORRECT."
Defendant never informed Suttill, nor did he inquire, as to whether the bank used a computer to pull checks on which stop payments had been received, and whether such system required a check amount correct to the penny in the stop order.
The court in finding in favor of plaintiff held that a 50 cent error in the amount of the stop payment order did not deprive the bank of a reasonable opportunity to act on the order. Id. at 142. In determining that the customer's error did not relieve the defendant of liability, the court stated:
Fidelity made a choice when it elected to employ a technique which searched for stopped checks by amount alone. It evidently found benefits to this technique which outweighed the risk that an item might be inaccurately described in a stop order. This is precisely the type of inevitable loss which was contemplated by the code drafters and addressed by the comment ... The focus of § 4-403 is the service which may be expected by the customer, and a customer may expect a check to be stopped after the bank is given reasonable notice. A bank's decision to reduce operating costs by using a system which increases the risk that checks as to which there is an outstanding stop payment order will be paid invites liability when such items are paid. [Ibid.]
The facts in FJS Electronics, Inc. v. Fidelity Bank, supra, are similar to the facts in the present case. As was the case in FJS Electronics, Staff Service's representative did not know that Midlantic utilized a computer to effect stop payment of a check. In addition, Midlantic never informed Staff Service that the exact amount of the check is necessary for the computer to pull the check. It chose a computerized system which searches for stopped checks by amount alone. By electing this system Midlantic assumed the risk that it would not be able to stop payment of a check despite the customer's accurate description of the account number, the payee's name, the number and date of the check and a de minimis error in the check amount. See FJS Electronics, Inc. v. Fidelity Bank, supra. Midlantic should not be permitted to relieve itself of this risk unless it calls attention to its computerized system and the *334 necessity for the exact check amount to meet computer requirements.
The court is not persuaded by the clause in the stop payment order which states that Midlantic cannot stop payment unless the information provided by the customer is correct, including the exact amount of the check to the penny. Indeed this clause is inaccurate since, as Midlantic's representative explained in his certification, "if the amount of the check is correct, the check will be stopped, although a discrepancy may exist in the remaining elements of the stop payment order, unless and until the customer instructs otherwise." Consequently, notwithstanding the clause, it appears that a check will be stopped even if all the information on the stop payment order is incorrect except the check amount.
Implicated also is the question of how said clause is affected by N.J.S.A. 12A:4-103(1) which provides that a bank and its customers may vary by agreement the effect of the provisions of article 4, but that
(N)o agreement can disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care or can limit the measure of damages for such lack or failure; but the parties may by agreement determine the standards by which such responsibility is to be measured if such standards are not manifestly unreasonable.
Did the bank exercise good faith in the placement of a clause on the stop payment order which did not focus on the single critical item which it required? Moreover, in these circumstances, it is manifestly unreasonable to measure a bank's responsibility by a term not brought to the customer's attention with such specificity as to permit him to give the bank notice "in such manner as to afford the bank a reasonable opportunity to act." See generally Roberts and Mann, "A Proposal for Regulating Banks' Use of Exculpatory Clauses in Stop Payment Orders," 84 Com.L.J. 183 (1979).
Therefore, the court holds that a bank has a reasonable opportunity to stop payment on a check when a customer accurately describes the check in all respects except for a single *335 digit error in the check amount. The result would be different only if the bank specifically informed the customer that its computer requires the exact check amount for stop payment.
The Uniform Commercial Code, N.J.S.A. 12A:1-101 et seq. must be liberally construed and applied to promote its underlying purposes. Id., 12A:1-101. The purpose of N.J.S.A. 12A:4-403 is expressed in comment 2 following the section:
The position taken by this section is that stopping payment is a service which depositors expect and are entitled to receive from banks notwithstanding its difficulty, inconvenience and expense. The inevitable occasional losses through failure to stop should be borne by the banks as a cost of the business of banking.
Accordingly, defendant's motion for summary judgment is denied.