KERRY N. BEST, PLAINTIFF-APPELLANT, v. DREYFUS
LIQUID ASSETS, INC. AND THE BANK OF NEW
YORK, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted January 14, 1987—Decided January 29, 1987.

Before Judges FURMAN and SHEBELL.

*Karl A. Fenske,* attorney for appellant.

*Griffiths & O'Connell,* attorneys for respondents (*David Griffiths,* on the letter brief).

The opinion of the court was delivered by

SHEBELL, J.A.D.

Plaintiff, Kerry M. Best, filed a complaint against defendant, Dreyfus Liquid Assets, Inc., for failure to stop payment on a check in the amount of $2,034, asserting negligence and breach of contract and of state banking laws. Defendant denied plaintiff's allegations and asserted defenses of failure to state a cause of action, ineffective notice and unjust enrichment. The trial court found for defendant and ordered involuntary dismissal at the close of plaintiff's case. Plaintiff appeals.

Plaintiff formulated plans in February 1984 to take a trip to Europe during May 1984 and in mid-March scheduled her vacation for the first three weeks of May. Plaintiff placed a deposit with a London based tour group for a one week trip to Florence beginning May 16, 1984, the last of her three weeks. She paid the balance of $2,034 for herself and her sister by check dated April 17, 1984.

Although plaintiff denied signing a contract with the tour group, she did sign and send to it a terms of booking form. She indicated that "if this [booking form] came to me beforehand which probably it did then I'm sure that I noticed that

there were cancellation charges depending on how far in advance you cancelled the trip."

The check in question was drawn on plaintiff's Dreyfus investment account, on which she could write checks of $500 minimum. No means to record check transactions was provided to her, but she received cancelled checks as they were written, with account statements. She kept her own record of checks by amount and payee, but not by preprinted check number because "[t]hey came back as you wrote them."

Shortly before her vacation began, plaintiff learned that her employer would not allow her a three weeks vacation. Therefore, she decided against the week in Florence and on April 24, 1984 placed a telephone call to Dreyfus to stop payment on her check. She advised the Dreyfus representative of the amount, account number, the payor and the payee of the check. She erroneously stated that the date of the check was April 16, 1984 instead of the 17th and indicated that the check number, of which she was uncertain, was between 14 and 17. She claims she was not told the exact date and check number were essential and that she was advised the check would be stopped and written confirmation sent.

Upon receipt of the stop payment confirmation, plaintiff signed and returned the original together with a $5 check. A photocopy of the original confirmation and plaintiff's carbon copy were introduced at trial. The check number on the photocopy is "17," although the carbon appears to reveal a "17" superimposed on a "14." The correct check number was "15." The term of the confirmation statement stipulates that the signor agrees

> that this stop payment order shall not be effective as to any check which is not accurately described above, or which has previously been paid or certified by the Bank. I agree that the Bank shall have a reasonable time to process this stop payment order.

Plaintiff subsequently called the New York office of the tour group to cancel her travel plans. On May 2, 1984, she called Dreyfus to confirm the stop payment order and was told that

the check "hadn't come through and if it did they would call me." On May 5, 1984 plaintiff left on her trip, returning on May 15 or 16.

After her return, plaintiff received a 40 percent refund check from the tour group with a letter explaining there was a 60 percent penalty fee for cancellation. She called Dreyfus and was informed that the check had been paid because she had not indicated the proper check number or date. No stop payment was carried out on any check written on her Dreyfus account. She testified that if she was informed that payment of the check had not been stopped, she could have changed her plans and taken the Florence trip.

Our review of the trial court's order to dismiss requires us to determine whether upon the facts and law plaintiff has shown any right to relief. *R.* 4:37–2(b). That rule articulates the standard as follows:

> Whether the action is tried with or without a jury, such motion shall be denied if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor. [*R.* 4:37–2(b) ].

Interpreting this rule in *Dolson v. Anastasia,* 55 *N.J.* 2, 5–6 (1969), our Supreme Court held that the motion must be denied

> if, accepting as true all the evidence which supports the position of the party defending against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could differ.... The point is that the judicial function here is quite a mechanical one. The trial court is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion. [ (citations omitted) ].

An appellate court must reverse "if there is any legitimate view of the proofs that would sustain a judgment for plaintiff...." *Lyons v. Hartford Insurance Group,* 125 *N.J.Super.* 239, 243 (App.Div.1973), certif. den. 64 *N.J.* 322 (1974).

> This case is governed by *N.J.S.A.* 12A:4–403:
>
> (1) A customer may by order to his bank stop payment of any item payable for his account but the order must be received at such time and in such manner as to afford the bank a reasonable opportunity to act on it prior to any action by the bank with respect to the item described in 12A:4–303.
>
> (2) An oral order is binding upon the bank only for fourteen calendar days unless confirmed in writing within that period. A written order is effective for only six months unless renewed in writing.

(3) The burden of establishing the fact and amount of loss resulting from the payment of an item contrary to a binding stop payment order is on the customer.

This provision is identical to the corresponding provision of the Uniform Commercial Code, U.C.C. § 4–403, 2A U.L.A. 170, 170–171 (1977 & Supp.1986), whose drafters intended that stopping payment is a service which depositors expect and are entitled to receive from banks notwithstanding its difficulty, inconvenience and expense. The inevitable occasional losses through failure to stop should be borne by the banks as a cost of the business of banking. [*N.J.S.A.* 12A:4–403 at 520, Uniform Commercial Code Comment 2].

All provisions of the Commercial Code "shall be liberally construed and applied to promote its underlying purposes and policies." *N.J.S.A.* 12A:1–102(1).

The New Jersey commentary to § 4–403 notes that the law enunciated in the pre-Code case of *Reinhardt v. Passaic-Clifton National Bank and Trust Co.*, 16 *N.J.Super.* 430 (App. Div.1951), aff'd, 9 *N.J.* 607 (1952), was in part "continued as law by the adoption of the Commercial Code ...":

In that case the drawee bank induced the drawer to sign a stop-order form containing an exculpatory clause providing, in effect, that the bank should not be liable if it paid the check through inadvertence or mistake. The court held that the clause was not effective to relieve the bank from liability because it was not supported by consideration. The same result would be achieved under article 4, but on grounds of public policy. See, section 4–103(1). Thomas v. First National Bank of Scranton, 376 Pa. 181, 101 A.2d 910 (1954) (Stop-order clause exempting bank from liability if check "be paid through inadvertence, accident or oversight", held to violate section 4–103(1) of the Commercial Code). [*N.J.S.A.* 12A:4–403 at 519, New Jersey Study Comment 1].

*See also N.J.S.A.* 12A:4–403 at 521, Uniform Commercial Code Comment 8. *Cf. Tusso v. Security National Bank,* 76 *Misc.*2d 12, 349 *N.Y.S.*2d 914 (Civ.Ct.1973).

The customer has the burden of proof of "establishing the fact and amount of loss ...," i.e., causation and damages. *N.J.S.A.* 12A:4–403(3). A binding order to stop payment must be received "in such manner as to afford the bank a reasonable opportunity to act on it...." *N.J.S.A.* 12A:4-403(1). The Code makes no further provision for how accurate the information must be.

The reasonableness standard, on which § 4–403(1) is based, does not rise to the level of certainty as is required by a minority of jurisdictions which have deviated from the Uniform Commercial Code. *See, e.g., Capital Bank v. Schuler,* 421 *So.* 2d 633, 35 *A.L.R.*4th 976 (Fla.Dist.Ct.App.1982) (strictly construing Fla.Stat. § 674.403(1) (1977) of the Florida Commercial Code which provides that an effective order must describe "with certainty the item on which payment is to be stopped...."). *See also* U.C.C. § 4–403, 2A U.L.A. 170, 172–174 (1977 & Supp.1986) (setting forth similar statutory provisions of California, Nevada and Texas).

The reasonableness of the description is a factual question which may in part be related to the institution's method for flagging customer accounts and searching for stopped checks. *See* 10 *Am.Jur.*2d Banks: Format and Sufficiency of Countermand or Notice § 645 at 617 (1963 & Supp.1986); Holahan, *Stop Orders,* 1 Rutgers-Camden L.J. 31, 38–39 (1969). *Cf. Chute v. Bank One of Akron, N.A.,* 10 *Ohio App.*3d 122, 460 *N.E.*2d 720, 722–723 (1983) (evidence of a bank's computerized system supported the validity of a customer's oral stop payment order). One commentator observes:

> There is certainly an argument that general banking usage permits computer handling of stop orders and that a stop order not supplying the needed information in accurate form is not "received ... in such manner as to afford the bank a reasonable opportunity to act on it...." But there is a counterargument that a bank wishing to obtain the benefits of automation must at the same time bear the costs of automation, including the assumption of the risk that the customer will not know what is required in a stop order and will issue an incomplete one. At a minimum, the courts are likely to say that the importance of the exact amount and the exact account number must be fairly brought home to the customer before his stop order is ruled inadequate. [Holahan, *supra,* at 39 (footnotes omitted)].

Courts in other jurisdictions following the reasonableness standard have allowed certain discrepancies in the description of an otherwise adequate order. *See, e.g., Hughes v. Marine Midland Bank, N.A.,* 127 *Misc.*2d 209, 484 *N.Y.S.*2d 1000 (Civ.Ct.1985) (where all information except the check number was accurate, the order was sufficient in view of the capability

of the bank's computer to identify and stop payment on check by means of the account number and check amount); *Shude v. American State Bank,* 263 *Mich.* 519, 248 *N.W.* 886 (1933) (erroneous date of check on stop payment order does not preclude recovery). *See also* Annotation, Sufficiency of description of check in stop-payment order under U.C.C. § 4–403, 35 *A.L.R.*4th 985 *passim* (1985 & Supp.1986) (the majority of reported cases from other jurisdictions adopting the language of the Uniform Commercial Code text generally hold that minor errors in the amount of the check do not disturb the sufficiency of the order's description); *Staff Service Associates, Inc. v. Midlantic National Bank,* 207 *N.J.Super.* 327 (Law Div.1985) (discussing cases from other jurisdictions involving minor errors in the check amount reported in the order to stop payment).

*Staff Service Associates, Inc.,* 207 *N.J.Super.* at 329, addresses the issue of "what manner of notice to a bank affords it a reasonable opportunity to stop payment on a check within the intendment of *N.J.S.A.* 12A:4–403(1)." There, the customer erred by sixty cents in reporting the check amount on the stop payment order which contained a clause requiring all the information to be correct including "the exact amount of the check to the penny, or the Bank will not be able to stop payment. . . ." *Ibid.* On defendant's motion for summary judgment, the court found for plaintiff, holding that

> a bank has a reasonable opportunity to stop payment on a check when a customer accurately describes the check in all respects except for a single digit error in the check amount. The result would be different only if the bank specifically informed the customer that its computer requires the exact check amount for stop payment. [*Id.* at 334–335].

The court reasoned that, in the absence of the bank's notice to the customer that the bank utilized a computer system which searches for stopped checks by check amount alone, "[the bank] assumed the risk that it would not be able to stop payment of a check despite the customer's accurate description of the account number, the payee's name, the number and date of the check and a *de minimis* error in the check amount." *Id.* at

333.  The bank's disclaimer clause was felt to violate the good faith requirement imposed on the bank by *N.J.S.A.* 12A:4–103(1) and was unreasonable for not bringing to the customer's attention the conditions necessary for the customer to satisfy *N.J.S.A.* 12A:4–403(1).  *Id.* at 334.

■  The trial court here erred in dismissing plaintiff's action. The reasonableness of plaintiff's description of the check was a decision for the jury.  Plaintiff's telephone conversations with Dreyfus did not reveal which items of information were critical to the bank's method of searching checks and the confirmation statement is not helpful in ascertaining the terms.  Defendant must exercise good faith under *N.J.S.A.* 12A:4–103(1) and must act reasonably in specifying the terms necessary for stopping payment.  207 *N.J.Super.* at 334.

Under *N.J.S.A.* 12A:4–403(3), actual damages resulting from wrongful payment of the check after receipt of a timely and effective stop payment order must be alleged and proven to be more than the mere assertion of a reduction in the customer's account.  *See Cicci v. Lincoln National Bank and Trust Company of Central New York,* 46 *Misc.*2d 465, 260 *N.Y.S.*2d 100 (Civ.Ct.1965); *Thomas v. Marine Midland Tinkers National Bank,* 86 *Misc.*2d 284, 381 *N.Y.S.*2d 797 (Civ.Ct.1976).  Questions of loss may be factual issues for the jury to decide.  *See Grego v. South Carolina National Bank,* 283 *S.C.* 546, 324 *S.E.*2d 94, 96 (1984).

■  The dispute of wrongful payment between the drawer of the check and the bank or institution upon which it is drawn sounds in tort, not contract.  *Cf. Wright v. Commercial and Savings Bank,* 297 *Md.* 148, 464 *A.*2d 1080, 1086 n. 3 (1983) (action for wrongful dishonor under § 4–402 sounds in tort); *Farmers and Merchants State Bank of Krum v. Ferguson,* 605 *S.W.*2d 320, 326 (Tex.Civ.App.1980) (action for wrongful dishonor under § 4–402 sounds in tort), judgment reformed in other part 617 *S.W.*2d 918 (Tex.1981).  Since an action for wrongful payment is not based on the check, it has been held that illegality or fraud in the underlying obligation or contract

is of no consequence to such action. *Cicci v. Lincoln National Bank and Trust Company of Central New York,* 46 *Misc.*2d 465, 260 *N.Y.S.*2d 100 (Civ.Ct.1965). However, the drawer is not absolved of liability to the holder in due course since

[t]he payment can be stopped but the drawer remains liable on the instrument to the holder in due course (Sections 3–305, 3–413) and the drawee, if he pays, becomes subrogated to the rights of the holder in due course against the drawer. Section 4–407. Any defenses available against a holder in due course remain available to the drawer, but other defenses are cut off to the same extent as if the holder himself were bringing the action. [*N.J.S.A.* 12A:4–403 at 521, Uniform Commercial Code Comment 8].

*Cf. Bruno v. Collective Federal Savings and Loan Association,* 147 *N.J.Super.* 115, 121 n. 1 (App.Div.1977). *See also Citizens National Bank of Englewood v. Fort Lee Savings and Loan Association,* 89 *N.J.Super.* 43, 51 (Law Div.1965). *See generally* 10 *Am.Jur.*2d Banks: Bank's Liability for Noncompliance with Countermand or Notice § 649 at 620–622 (1963 & Supp.1986).

Plaintiff did not merely assert a reduction in her account balance; she claimed losses, which she alleged she would not have suffered if she had been informed that the stop payment order would be ineffective. The question of loss is a factual issue for the jury.

We reverse and remand.