CARLTON, J.,
dissenting:
¶25. I respectfully dissent from the disposition of the majority’s opinion. I agree with the majority that the reporting period may be modified to sixty days.[1] However, I submit that in light of the standard of review applicable to summary judgment, we should reverse and remand the trial court’s grant of summary judgment in this case since genuine issues of material fact exist as to whether Bancorp-South failed to exercise its duty of due care or good faith as to any unauthorized checks or withdrawals occurring within the sixty-day reporting period wherein the bank possessed actual knowledge of unauthorized signatures on checks and transactions. Chapman and Century attest that they provided the bank with telephonic notice of unauthorized checks and faxed a letter to the bank due to unauthorized signatures on checks.[2] I further submit that a genuine issue of material fact exists as to whether Chapman’s oral notice and Century’s faxed letter complied with the deposit agreement’s requirement of notice to the bank of forgeries, particularly in *352 light of the evidence that the bank possessed actual knowledge of unauthorized signatures on checks, which caused the bank to alert Chapman of fraud in August 2005.[3] See Am. Airlines Emps. Fed. Credit Union v. Martin, 29 S.W.3d 86, 97 (Tex.2000).
¶ 26. I would instruct the trial court to determine upon remand what particular disputed checks, if any, fall within the sixty-day reporting period after the bank received notice of unauthorized checks or forgeries in August 2005, when notified by Chapman after the bank called him; on September 29, 2005, when notified by Century; and on October 12, 2005, when Century reported unauthorized checks by faxed letter to the bank. I respectfully submit that the claims regarding unauthorized checks or forgeries, if any, posted before that reporting period are time-barred, and summary judgment is proper as to those. As stated, a review of the record, including deposition testimony therein, reflects that a genuine issue of material fact exists as to whether Century complied with its agreement by providing sufficient notice of the forgeries by Chapman’s telephonic notice in August 2005; the telephonic notice provided by Century in September 29, 2005; or the faxed letter sent to the bank by Century on October 12, 2005. The trial court as well as this Court must view the evidence in the light most favorable to the nonmoving party in reviewing the summary-judgment motion.[4]
¶ 27. Viewing the facts in the light most favorable to the nonmoving party, the record in this case shows that in response to an inquiry by the bank about a potential forgery, Chapman, an authorized signatory of Century’s account, provided that he called the bank to disallow a check and notified the bank to pay items only upon an authorized signature. The signature cards possessed by the bank reflect that only two persons were authorized to sign and authorize transactions on the account. Century also asserts that after its September 2005 audit of the account, the Richland branch of the bank was contacted and notified of several forgeries on the account. Then, on October 12, 2005, Century faxed a letter to the branch manager of the Richland branch of the bank again notifying the bank of the forgeries, and Century sent another letter to the bank a year later in August 2006, regarding its claim of breach of warranty.
¶ 28. The bank bears the responsibility of ensuring only authorized signatures approve of transactions on an account, as reflected by the signature cards and account agreement. In applying the law to the sufficiency of the telephonic notice provided regarding the forgeries in this case, I find instructive the case of ADC Rig Serv., Inc. v. JPMorgan Chase Bank, N.A., 641 F.Supp.2d 617 (S.D.Tex.2009). In that case, the court found that for summary-judgment purposes, sufficient evidence was presented to show that oral notice to the bank of forgeries substantially complied with the contractual provisions even though the contract required written notice. Id. at 624-26. More specifically, the JPMorgan court found that the facts presented provided sufficient evidence as to when the possible forgeries had first been reported to the bank to enable a jury to conclude that the reporting requirement *353 of the contract had been satisfied. Id. The court then determined that summary judgement was improper as to the unauthorized checks posted during the reporting period when the bank received the oral notice of possible forgeries. Id. The court, however, found summary judgment proper as to any unauthorized checks posted before the reporting period wherein the bank received oral notice of possible forgeries. Id,[5]
¶ 29. With respect to the law allowing the reporting period to by varied by agreement, the plain language of Mississippi Code Annotated section 75-4-103(a) (Rev. 2002), as well as precedents of other jurisdictions applying mirror images of this statute, clearly establishes that the notice provision at issue may be contractually shortened. However, cases applying similar statutes provide that a bank and a customer may shorten the statute-of-repose period for reporting unauthorized checks or withdrawals as long as the shortened period is not manifestly unreasonable.[6] Neither the Mississippi statutes nor statutes of sister jurisdictions define when a shortened period is manifestly unreasonable. However, as noted in Martin, 29 S.W.3d at 96-97, shortened notice periods from fourteen to sixty days have been enforced by the courts.
¶ 30. While courts have found reporting periods of fourteen, thirty, and sixty days to not be manifestly unreasonable, the courts in those cases clearly determined that the bank was not excused from its duty of due care and good faith when contractually shortening the period.[7] In Martin, 29 S.W.3d at 95-97, the court explained that a reporting period shortened too much would in effect disclaim the bank’s liability for lack of ordinary care and therefore void the provision.[8] See Miss.Code Ann. § 75-4-103(a) (prohibiting the parties to the agreement from disclaiming a bank’s responsibility for its lack of good faith or failure to exercise ordinary care or limiting the measure of damages). I respectfully submit that the plain language of section 75-4-103(a), consistent with precedent of sister jurisdictions, prohibits the provision in this instant contract from disclaiming the bank’s liability for lack of due care and good faith. See Phillips Home Furnishings Inc. v. Continental Bank, 231 Pa.Super. 174, 331 A.2d 840, 844-45 (1974) (reversed on other grounds) (finding exculpatory provision in contract against public policy and providing that bank cannot exculpate itself from negligence due to its own lack of due care or good faith because of great need for professional and competent banking services and because justifiable reliance on integrity and safety of financial institutions is too strong to permit a bank to contract away its liability for failure to provide service and protections its customers expect).[9]
*354 ¶ 81. In applying section 75-4-103(a) to this case, the disclaimer provision regarding good faith and the duty of due care in the contract is void by operation of law due to its conflict with section 75-4-103(a), and this disclaimer is therefore inconsistent with reasonable commercial practices as defined by the Mississippi Legislature in that enactment. However, as acknowledged, I concur with the majority opinion in finding that parties indeed may vary the reporting period by agreement. Best v. Dreyfus Liquid Assets, Inc., 215 N.J.Super. 76, 521 A.2d 352, 354-55 (N.J.Sup.Ct.App.Div.1987); Freese, 644 S.E.2d at 550 (thirty-day time period agreed to by the parties was not manifestly unreasonable nor inconsistent with commercial practices since the agreement did not excuse the bank from its duty of ordinary care); Martin, 29 S.W.3d at 97 (if customer complies with notice period, regardless of whether it is the statutory period or a shorter period, the bank is still liable for any failure to exercise due care). With the duty of due care and good faith in issue in this case, the trial court must have determined the sufficiency of notice to the bank by Chapman’s telephonic response to the bank in August 2005, particularly in light of the testimony that the bank called Chapman to notify him of a fraudulent wire transaction to a credit card. In his deposition, Chapman explained that he confirmed with the bank that the transaction was not authorized. The bank’s call to Chapman shows that the bank possessed actual knowledge and notice of suspected unauthorized withdrawals and forgery sufficient to survive summary judgment. As discussed, Chapman confirmed the bank’s suspicion. If this notice is sufficient to survive summary judgment — and I respectfully submit that the deposition testimony of Chapman and of BancorpSouth’s representative, Cathy Talbot, shows that sufficient facts indeed were presented — then the bank’s duty of good faith and due care is in issue.[10]
¶ 32. One treatise provides the following helpful commentary based upon statutory provisions and judicial decisions construing the statutes at issue in this case:
[T]he Uniform Commercial Code ... ob-ligatefs] banks to act in good faith and exercise ordinary care in dealing with customers and prohibits banks from disclaiming the duty to use ordinary care or from limiting their liability for the failure to use ordinary care. The Code provision is in conformity with case law which had begun to hold stipulations exonerating banks from liability invalid either as against public policy or for lack of consideration. While the Code provision prohibits a bank from disclaiming its duty to use ordinary care or from limiting its liability for the failure to use ordinary care, it allows the parties by agreement to set the standards by which the bank’s responsibility is to be measured if those standards are not manifestly unreasonable.
Federal Regulation CC provides that the effect of the provisions regarding the collection of checks may be varied by agreement, except that no agreement can disclaim the responsibility of a bank *355 for its own lack of good faith or failure to exercise ordinary care or can limit the measure of damages for such lack or failure. As with the Code, the Regulation does allow the parties to determine by agreement the standards by which the responsibility of the bank is to be measured so long as those standards are not manifestly unreasonable.
8 Williston on Contracts § 19:30 (4th ed.2010).
¶ 33. Based upon the foregoing, I would reverse and remand the grant of summary judgment by the trial court because genuine issues of material fact exist as to whether Century complied with the notice provisions of its deposit contract/checking account by the oral notice of Chapman in August 2005 and by Century in September 2005, or by the letter faxed by Century to the bank in October 2005. I respectfully submit that genuine issues of material fact also exist as to whether the bank complied with its duty of ordinary care and good faith in performing its banking services.
IRVING AND GRIFFIS, P.JJ., AND JAMES, J., JOIN THIS OPINION.

. Jurisdictions have enforced shortened notice periods ranging from fourteen to sixty days. See Am. Airlines Emps. Fed. Credit Union v. Martin, 29 S.W.3d 86, 97 (Tex.2000); see also ADC Rig Serv., Inc. v. JPMorgan Chase Bank, N.A., 641 F.Supp.2d 617, 623 (S.D.Tex.2009).

. Signature cards establish a contract between the customer and the bank. Martin, 29 S.W.3d at 96; see generally JPMorgan, 641 F.Supp.2d at 623.

. Freese v. Regions Bank, N.A., 284 Ga.App. 717, 644 S.E.2d 549, 552 (2007) (parties may vary notice period by agreement if shortened period is not manifestly unreasonable, but bank still liable for any failure to exercise due care).

. See Webb v. Braswell, 930 So.2d 387, 395 (¶ 12) (Miss.2006) (setting forth the standard of review employed when considering a trial court’s grant of summary judgment).

. The court in JPMorgan also found that the statutory prohibition on recovery by a bank customer who fails to detect and report within a certain number of days of the first unauthorized transaction in a series by the same wrongdoer failed to apply when the bank failed to exercise ordinary care in paying the items. JPMorgan, 641 F.Supp.2d at 622-23. Signing signature cards establishes a contract. Id. at 623.

. JPMorgan, 641 F.Supp.2d at 622; Martin, 29 S.W.3d at 95, 97.

. See Peters v. Riggs Nat'l Bank, N.A., 942 A.2d 1163, 1168 (D.C.2008) (sixty days); Freese, 644 S.E.2d at 550 (thirty days).

. Martin, 29 S.W.3d at 95-97; see also Freese, 644 S.E.2d at 550.

. Contracts against liability for negligence are not favored by the law. Dilks v. Flohr Chevrolet, Inc., 411 Pa. 425, 192 A.2d 682, 687 (1963).

. The deposition of BancorpSouth representative Talbot, at exhibit G in the record, explains that only two individuals possessed authority to sign checks on Century’s accounts. The individuals were Clarence and Jo Lynn Chapman. Talbot admitted in her deposition that the signatures on check numbers 3338, 3362, and other checks did not "agree” with the signatures on file at BancorpSouth. Therefore, not only were these unauthorized transactions on Century’s accounts, but the signatures were unauthorized. Talbot’s testimony reflects that these checks with unauthorized signatures were on the July 2005 statement, and she confirmed that had the forgeries and unauthorized transactions been discovered at that time, then most of the forgeries would have been prevented.