JAMES MCNAUGHTON and Others, the Foregoing Individuals Suing in Their Own Behalf and in Behalf of All Other Members of Local Union No. 3 of the International Brotherhood of Electrical Workers Similarly Situated, Respondents, *v.* HOWELL H. BROACH, Individually and as General President of the International Brotherhood of Electrical Workers, Appearing Specially, Appellant, Impleaded with Others, Defendants.

First Department, October 28, 1932.

*Harold Stern* of counsel [*Frank P. Walsh*, attorney], for the appellant, appearing specially.

*John Holley Clark, Jr.*, for the respondents.

MARTIN, J. Sixteen members of Local Union No. 3, International Brotherhood of Electrical Workers, sued the defendant Broach, individually and as president of the brotherhood, and thirty-four additional defendants, all of whom are said to be officers of the local union. It is alleged in the complaint that the local union consists of about 8,000 members and is part of the international brotherhood which has about 40,000 members and that the plaintiffs are members in good standing, and by reason of their

payment into the funds of the local union and otherwise have material financial interests therein.

The complaint also sets forth that since 1926 the defendant Broach and the others conspired among themselves to obtain and assure the continuance of an arbitrary control of the affairs of the local union, to deprive it of all autonomy and its members of all voice in its affairs and to manage it for their own benefit, financial or otherwise, to the detriment of the plaintiffs and other members.

In the prayer for relief the plaintiffs seek judgment restraining the defendants from barring any member from meetings or from the employment room of the local union, declaring illegal and void the amendments to the by-laws complained of, restraining the defendants from refusing to let any member work for any employer from whom he can obtain employment; restraining them from ordering members of the local to cease or refrain from working for a contractor at the behest or dictation of another contractor or for any other reason except a *bona fide* breach of valid union rules. It asks that the defendants be directed to restore to the plaintiffs their cards, to rescind their fines and restore all their rights as members, directing defendants to pay to plaintiffs the sum fixed by the by-laws for each week the plaintiffs have been unemployed, restraining the defendants from continuing to exercise the functions of the respective offices they illegally hold, and asking that the court direct a special election; and that the defendants be required to account for the funds and property which have come into their possession. The plaintiffs seek to have their rights as union members restored and seek to have the control of their local restored to its members.

The complaint presents a picture in which the dominating figure is the defendant Broach. He alone is sued as an individual, as well as in his official capacity, because it is alleged the other officials are subject to and under his control.

The court has heretofore passed upon the complaint and held it sufficient. Other relief in the form of a preliminary injunction was also granted restraining the defendants from proceeding against the plaintiffs in and before the local or the international.

The appellant has appeared specially and claims that the service upon him by publication is improper since he is a non-resident and has no property within the State of New York; that there is no proof of the issuance of a warrant of attachment against his property within this State, which is a usual condition precedent to the granting of the order for service by publication, and that this order and the service by publication are void.

The respondents seek to uphold the substituted service on the ground that the cause of action arose in this State; that the office of the local union is here; that the acts complained of were carried out in this State; that Broach was here when he committed the acts, formed the conspiracy and took over the management of the local union, and that he was here to continue the management until 1930, when he became international president and moved to Washington. They say they have shown due diligence in attempting to serve Broach in this State, but have been unable to do so because of his residence in Washington; that he has never appeared openly at meetings of the local union, and when in New York he kept his whereabouts a secret, although the plaintiffs attempted to serve him at various times when they believed him to be in New York.

In denying the motion of the appellant the Special Term said: " Motion to vacate and set aside the order for service by publication is denied. The cause of action arose here; it relates to property rights which have their situs here, and the relief sought may be enforced here."

While it may be true that the cause of action arose in this State, nevertheless that alone is not sufficient to permit substituted service upon Howell H. Broach. The action is brought to annul certain acts performed by him and the union, and to regulate in the future the personal conduct of Broach with reference to union matters.

The cause of action must not only arise in this State but must be one in which the judgment to be rendered will be, at least to some extent, capable of enforcement. It must be shown that at the time that the order of publication is made there is property of the defendant in the State over which the court can assume jurisdiction, since it can exercise none *in personam*. A judgment against Broach directing him to do certain acts or to cease a certain course of conduct would not be enforcible if rendered by the courts in this State, without service which will give jurisdiction to the courts.

In *Pennoyer* v. *Neff* (95 U. S. 714) the United States Supreme Court held that an action brought against a non-resident where substituted service or personal service outside of the territorial jurisdiction is made, is in the nature of an action *in rem*.

In *Hodgens* v. *Columbia Trust Co.* (185 App. Div. 555) the court held that there must be property within the State over which the court may obtain jurisdiction. The court said: " This does not mean, however, that the fact of non-residence changes the character of the action, but as jurisdiction must be obtained over either the person or property there must be property which can be subjected to the operation of the judgment over which the court asserts

its jurisdiction by some appropriate proceeding. If there be no *res* within the State, there is nothing upon which the court can exercise its jurisdiction."

In *Logan* v. *Greenwich Trust Co.* (144 App. Div. 372; affd., 203 N. Y. 611) it was held that no obligation exists upon the defendant to appear, and the only result could be that the plaintiff's lien acquired by virtue of the levy under the warrant of attachment would be enforced.

Illustrating the rule covering the subject, the court in *Hodgens* v. *Columbia Trust Co.* (*supra,* 561) said: " If the non-resident defendant should not appear and thus subject itself to the jurisdiction of the court, no judgment could be entered that could be enforced. If the court should order the agreement to be canceled and the notes and bonds to be delivered by defendants, how could it make its order effective? If it should grant an injunction restraining the defendants from selling and transferring the stock, the stock being in the possession of the non-resident defendant, how could it be restrained or punished for a violation of the order? "

In *Bryan* v. *University Publishing Co. of N. Y.* (112 N. Y. 382, 388) the court tersely stated the law as follows: " The court can give no relief, and the impropriety of issuing an order which, if it leads to a judgment, ' would operate on nothing in the State and be regarded by nobody out of it,' becomes apparent. It offends every principle by which the jurisdiction of a court can be vindicated, and should not be allowed to stand."

In the present case the plaintiff may obtain jurisdiction of the union by service upon officers within the State and may be in a position to have its decrees enforced by the union within the State. It cannot compel or prevent action by a non-resident who has not submitted to the jurisdiction of the court and who has been served by substituted service only. No property has been attached and there is no property in the State upon which it may enforce its decree in a manner that will bind the appellant. One of the purposes of the action is to compel the appellant to account. There is no method by which such a judgment may be enforced unless the courts obtain jurisdiction, and there appears to be no course by which jurisdiction over the appellant may be obtained since he has refused to submit to jurisdiction.

No State can exercise direct jurisdiction and authority over persons who are non-residents and who refuse to submit to jurisdiction, or over property without its territory, and where the court has only jurisdiction *in rem* its judgment affects only property constructively brought before the court. It must be shown that at the time the order of publication is made there is property

of the defendant in the State which may be reached by the judgment of the court.

In a recent well-considered opinion in *Gore* v. *Pennsylvania R. R. Co.* (144 Misc. 639), Mr. Justice MACGREGOR said: " The rights are intangible and the determination of the question turns upon the question as to whether or not the rights constitute such a species of property that an action *in rem* can be maintained. If the rights are not of such a nature, then the action is one *in personam* and jurisdiction cannot be obtained of a non-resident defendant by publication."

In *Hanna* v. *Stedman* (230 N. Y. 326) we find the following: " An action or proceeding *in rem* has for its subject specific property which is within the jurisdiction and control of the court to which application for relief is made. The action proceeds against such specific property and its object is to have the court define the rights therein of various and conflicting claimants. Jurisdictional control of the property affords the basis for service beyond its jurisdiction upon those who may be interested in its disposition. The result of such an action is a judgment which operates upon the property and which has no element of personal claim or personal liability."

In the recent case of *Ebsary Gypsum Co.* v. *Ruby* (256 N. Y. 406) the court reiterates the law that where there can be no effective judgment without jurisdiction of the person, or an attachment of some property there no order of publication can be granted. The court said: " If the owners refuse to appear and choose to suffer a default, the court will be powerless by any effective judgment to compel them to make delivery of the necessary documents. It cannot compel them to set their hands to the documents under penalty of contempt, for contempt there can be none in the absence of jurisdiction of the person. It cannot direct the execution of the documents by the sheriff or a master, for the direction will be *brutum fulmen* without the presence of the *res*, the subject of the transfer."

If the plaintiffs obtain a judgment against the union, it may suffice to protect their rights. If not, any judgment against Borach will not aid in the enforcement thereof.

The order appealed from should be reversed, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs.

FINCH, P. J., MCAVOY and O'MALLEY, JJ., concur; TOWNLEY, J., dissents.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.