0339

James M. GREGO, Appellant, v. SOUTH CAROLINA NATIONAL BANK, Respondent.

(324 S. E. (2d) 94)

Court of Appeals

*George J. Kefalos* of *Joye, Claypoole & Kefalos*, Charleston, *for appellant.*

*L. Henry McKellar*, Columbia, *for respondent.*

Heard Oct. 16, 1984.

Decided Dec. 14, 1984.

BELL, Judge:

James Grego sued South Carolina National Bank for damages he claims were caused when SCN paid his check over a stop payment order. The case was tried before a jury. After hearing all the evidence, the trial judge directed a verdict for SCN. Grego appeals. We reverse and remand for a new trial.

Grego was one of five investors in a restaurant owned by Mona, Inc. To obtain financing for the business, he was co-maker and guarantor on a loan from First National Bank to Mona. Grego's home secured the loan. By July 1980 the fifteenth installment on this loan was past due.

On July 30, 1980, Grego spoke with Steve Turner of First National concerning the arrearage. According to Grego, Turner gave him a payoff figure of approximately $57,000 after fourteen payments. Grego told Turner he would make the fifteenth payment and arranged to meet him at the bank on August 1 to pay this installment.

Grego testified that at this meeting Turner agreed to hold his check until later in the day, when Grego would decide whether to pay the fifteenth installment or let the bank foreclose. After consulting with his attorney, he decided to stop payment on the check and let First National foreclose so

he could recover from his partners. Grego notified Turner of this choice and took the necessary steps to stop payment on the check. A week later First National brought suit seeking $57,820.42. Grego settled the lawsuit for $54,000 and First National executed a release.

When he received his bank statement from SCN later in August, Grego discovered that his check to First National had been paid contrary to the stop order. As a result, two of his checks had been returned for insufficient funds. He notified SCN. SCN credited his account for $1,511.40, the amount of the check, plus the handling charges for the two dishonored checks. SCN sent letters of apology to the payees of the dishonored checks. Some five months later, in January 1981, Grego learned that his checks were again being returned for insufficient funds. His January statement from SCN listed the $1,511.40 check as paid on January 6. "Stop Payment" was stamped across the face of the cancelled check, but had been scratched out.

Steve Turner of First National testified that on August 1, 1980, following several conversations which involved different instructions about the check, he informed Grego the check had been applied to the loan and could not be pulled back. He also testified the balance figure he gave Grego was for the amount due as of July 1, and the fifteenth payment was not reflected on bank records until August 2. Turner conceded the bank would not have sued if the check had been paid and went on to claim the fifteenth payment was, in fact, properly paid. However, he also stated the bank initiated suit for the amount of $57,820.42, which included the fifteenth payment as outstanding. The suit was commenced seven or eight days after receipt of Grego's check for $1,511.40.

Scott Tucker of First National testified he informed Grego on August 1 that his check had been applied to the loan. According to Tucker, the bank negotiated the $54,000 payoff settlement on the loan considering payment fifteen had been made. He further testified that he had sworn in his verification that the amount of $57,820.42 was owed, although he claimed the fifteenth payment had been made eight days earlier, on August 1.

A motion for a directed verdict should not be granted if the evidence, considered most favorable to the nonmoving party, is susceptible of more than one reasonable

inference. *O'Neal v. Carolina Farm Supply of Johnston*, 279 S. C. 490, 309 S. E. (2d) 776 (S. C. App. 1983).

■ Section 36-4-403(1), Code of Laws of South Carolina, 1976, gives a bank customer the right to stop payment on a check. SCN concedes Grego's stop order was valid. If the customer suffers a pecuniary loss as a result of the bank's failure to comply with a valid stop order, the customer may seek damages from the bank for the amount of the loss. *See Carroll v. South Carolina National Bank*, 211 S. C. 406, 45 S. E. (2d) 729 (1947) (applying pre-code law); Section 36-4-403(3), Code of Laws of South Carolina 1976. The loss, however, must be more than the mere debiting of his account. *Mitchell v. Republic Bank & Trust Co.*, 35 N. C. App. 101, 239 S. E. (2d) 367 (1978).

■ Section 36-4-403(3), Code of Laws of South Carolina, 1976, places the burden of proof of loss on the customer when a check is paid contrary to his stop order. The question before this Court is not whether Grego met this burden, but whether the evidence he presented at trial was susceptible of the inference he suffered a loss other than the debiting of his account.[1] If it was, Grego was entitled to have the jury decide the factual dispute.

■ In his order the trial judge implicitly concluded that the $1,511.40 was applied to the loan balance and accounted for part of the difference between the amount First National claimed was due and the amount of the settlement with First National. However, Grego testified the settlement reduction was entirely attributable to a compromise on the interest computed on the outstanding balance. Moreover, First National in the foreclosure suit claimed the loan balance was $57,820.42, a figure which admittedly would not reflect a credit of the $1,511.40 towards reducing the loan balance. This evidence was in conflict with the testimony of First National's officers that the $1,511.40 was credited to the loan balance. Thus, we find there was an issue of fact for the

---

[1] Grego also raises the question whether a subrogee bank under Section 36-4-407 is subject to its customer's defense of estoppel against the payee. The record does not indicate this issue was presented to the trial judge. Accordingly, it is not properly before this court. *Mackey v. Kerr-McGee Chemical Co.*, 280 S. C. 265, 312 S. E. (2d) 565 (S. C. App. 1984).

jury's determination. Accordingly, the judgment below is reversed and the cause remanded for a new trial.

Reversed and remanded.

SANDERS, C. J., and GARDNER, J., concur.