Jeanne R. KUNKEL, d/b/a Precious Moments, Plaintiff and Appellant,

v.

FIRST NATIONAL BANK OF DEVILS LAKE, North Dakota, Defendant and Appellee.

Civ. No. 11200.

Supreme Court of North Dakota.

Sept. 17, 1986.

Jeanne R. Kunkel, pro se.

Degnan, McElroy, Lamb, Camrud, Maddock & Olson, Grand Forks, for defendant and appellee; argued by Cynthia Tredwell, 3rd year Law Student under the direction of Marjorie M. Young.

GIERKE, Justice.

Jeanne Kunkel, d/b/a Precious Moments, appeals from a summary judgment dismissing her action against the First National Bank of Devils Lake (First National) for damages incurred as a result of its allegedly negligent payment of a check over a stop payment order. Because genuine issues of material fact remain to be resolved, we reverse and remand for trial.

The evidence, viewed in the light most favorable to the appellant, reflects that prior to their marriage, Jeanne Kunkel and Roger Kunkel executed a promissory note and mortgage with the Ramsey National Bank and Trust Company of Devils Lake (Ramsey National) for the purpose of financing the purchase of a house. This promissory note was for the principal sum of $45,000. The note and mortgage were signed by both Jeanne Kunkel and Roger Kunkel. A second promissory note was executed on the same day to Ramsey National. The second promissory note was for the principal sum of $27,600 and was for the down payment on the house. This note was signed only by Roger Kunkel and was secured by an assignment of a contract for deed between Roger and another party.

On May 20, 1983, Jeanne Kunkel wrote a check for $7,048.27 to Ramsey National drawn on her Precious Moments business account with First National. The check carried a notation that it was an "interest payment" to "Ramsey Bank" and was allegedly to be used as an interest payment on the down payment note.

On May 23, 1983, Jeanne Kunkel, personally and in writing, instructed First National to stop payment on the check. The stop payment order lists the correct check number, date of the check, and payee. The amount of the check, however, is listed as "$7400?" On May 25, 1983, First National paid the check when it was presented by Ramsey National and deducted $7,048.27 from the Precious Moments business account. Numerous checks were ultimately returned to suppliers of Precious Moments because of insufficient funds. Kunkel demanded that First National recredit her business account, but the bank refused.

In the meantime, Ramsey National brought a foreclosure action against the Kunkels on the promissory note and mortgage they had executed with regard to the purchase of the house. A judgment of foreclosure was ultimately entered in that action.

Jeanne Kunkel brought the present action against First National alleging that the bank was negligent in paying the check over her stop payment order and seeking as damages $7,048.27, $50,000 for mental anguish, and $30,000 for injury to her credit rating. First National moved for summary judgment, which the district court granted. The court ruled that "[t]he Judgment in ... [the foreclosure action] is dispositive of the issue raised in the present complaint and therefore, as a matter of law, summary judgment is ordered entered." This appeal followed.

The purpose of summary judgment is to promote the expeditious disposition of a

legal conflict on its merits, without a trial, if no dispute as to material facts or inferences to be drawn therefrom exists or whenever only a question of law is involved. *E.g., Gowin v. Hazen Memorial Hosp. Ass'n,* 349 N.W.2d 4, 8 (N.D.1984). Summary judgment is inappropriate if neither party is entitled to judgment as a matter of law or if reasonable differences of opinion exist as to the inferences to be drawn from undisputed facts. *Gowin, supra.*

Kunkel asserts that material factual disputes exist which render summary judgment inappropriate. First National asserts that, as a matter of law, Kunkel's stop payment order was not received in such a manner as to afford it an opportunity to stop payment on the check, and, alternatively, that Kunkel failed to meet her burden of proof as to the fact and amount of loss caused by the bank's payment over the stop payment order because the payment discharged a legal obligation Kunkel owed to Ramsey National.

A bank customer has the right to order her bank to stop payment on any item payable through her account by complying with the provisions of § 41–04–30 [4–403], N.D.C.C. Subsection 1 of the statute provides that "[a] customer may by order to his bank stop payment of any item payable for his account but the order must be received at such time and in such manner as to afford the bank a reasonable opportunity to act on it prior to any action by the bank with respect to the item described in section 41–04–27." This provision of the Uniform Commercial Code has been construed as requiring the depositor to sufficiently describe the check upon which payment is to be stopped before a stop payment order can become effective. Annot., 35 A.L.R.4th 985 (1985). First National asserts that because an incorrect amount of the check was listed on the stop payment order, the order was not received "in such manner as to afford the bank a reasonable opportunity to act on it...."

We believe that, under the circumstances, whether the stop payment order was valid and was received in such manner as to afford the bank a reasonable opportunity to act on it is a question of fact. The stop payment order contains the correct check number, date of the check, and payee. The order lists the amount of the check as $7,400 followed by a question mark. We cannot say that, as a matter of law, the discrepancy between the actual amount of the check and the amount listed along with a question mark in the stop payment order renders the stop payment order invalid. *See generally Dunbar v. First National Bank of Scotia,* 63 A.D.2d 755, 404 N.Y.S.2d 722 (1978); *Johnson v. Grant Square Bank & Trust Co.,* 634 P.2d 1324 (Okla.Ct.App.1981). As the court stated in *Johnson, supra,* 634 P.2d at 1326, "[m]any factors determine whether the Bank acts reasonably ..., and nothing in the record establishes that their action in not stopping payment was commercially reasonable as a matter of law." *See also* J. White and R. Summers, Uniform Commercial Code § 17–5, at pp. 679–680 (2d ed. 1980).

First National asserts in the alternative that even if it did improperly pay the check over the stop payment order, Kunkel has failed to prove any actual loss caused by the payment because it discharged an underlying legal obligation Kunkel owed to Ramsey National.

Section 41–04–30(3) [4–403], N.D.C.C., provides that "[t]he burden of establishing the fact and amount of loss resulting from the payment of an item contrary to a binding stop payment order is on the customer." It has been held that "where the bank pleads non-loss by the bank customer, a bank customer, in order to recover for damages caused by the bank's payment of a check contrary to a valid stop payment order, must show some loss other than the mere debiting of his bank account in the amount of the check." *Mitchell v. Republic Bank & Trust Co.,* 35 N.C.App. 101, 239 S.E.2d 867, 869 (1978). *See also Isaac v. American Heritage Bank,* 675 P.2d 742 (Colo.1984); *Southeast First Nat. Bank v. Atlantic Telec,* 389 So.2d 1032 (Fla.Dist.Ct.

App.1980); *Saratoga Polo Ass'n v. Adirondack Trust Co.*, 118 Misc.2d 247, 460 N.Y.S.2d 712 (1983); *Thomas v. Marine Midland Tinkers Nat. Bank*, 86 Misc.2d 284, 381 N.Y.S.2d 797 (1976); *Cicci v. Lincoln Nat. Bank & Trust Co. of Cent. N.Y.*, 46 Misc.2d 465, 260 N.Y.S.2d 100 (1965); *Siegel v. New England Merchants Nat. Bank*, 386 Mass. 672, 437 N.E.2d 218 (1982); *Grego v. South Carolina Nat. Bank*, 283 S.C. 546, 324 S.E.2d 94 (Ct.App. 1984). *But see Whitmire v. Woodbury*, 154 Ga.App. 159, 267 S.E.2d 783 (1980), *reversed on other grounds*, 246 Ga. 349, 271 S.E.2d 491 (1980); *Hughes v. Marine Midland Bank, N.A.*, 127 Misc.2d 209, 484 N.Y.S.2d 1000 (1985).

A bank's payment of a check over a valid stop payment order which discharges an underlying legal obligation the depositor had to the payee may not, in effect, result in a "loss" to the depositor. *See, e.g., Atlantic Telec, supra; Siegel, supra.* Thus, § 41–04–34 [4–407], N.D.C.C., gives a payor bank that has improperly paid a check contrary to a stop payment order subrogation rights of various parties to the underlying transaction, including the rights of the payee against the drawer, to prevent unjust enrichment of the drawer. *See, e.g., Siegel, supra; Mitchell, supra.* Generally, when a check is paid over a valid stop payment order and the payor bank asserts non-loss on the part of the customer, whether the customer suffered a loss other than the debiting of his account presents a question for the trier of fact. *See Mitchell, supra; Cicci, supra; Grego, supra.*

It cannot be said that as a matter of law Kunkel suffered no loss other than the debiting of her account. Although First National asserts that the payment discharged a legal obligation Kunkel owed to Ramsey National, Kunkel has alleged in an affidavit that Ramsey National "had no rights either on the check or under the transaction out of which the item arose." Kunkel further alleges that the check, which was issued on her Precious Moments account, was used to pay the interest due on the down payment note which did not carry her signature and to which she was not a party. Although First National asserts that Kunkel acknowledged that she was obligated on the down payment note in deposition testimony [1] taken in conjunction with the foreclosure action and that the down payment note was, in any event, part of the entire real estate transaction, these circumstances do not establish as a matter of law that the payment discharged a legal obligation Kunkel owed to Ramsey National.[2] In view of Kunkel's allegations, the foreclosure judgment is not, as a matter of law, dispositive of the issue whether payment of the check discharged a legal obligation Kunkel owed Ramsey National. We conclude that summary judgment was improperly granted in this case.

Accordingly, the summary judgment is reversed and the case is remanded for trial.

ERICKSTAD, C.J., and VANDE WALLE and MESCHKE, JJ., concur.

LEVINE, J., concurs in the result.

---

1. The deposition taken in conjunction with the foreclosure action does not appear in the record certified to this court on appeal. In any event, such a statement, if made, rather than establishing a legal obligation, can as easily be construed to show that she, as the wife of Roger Kunkel, was responsible for Roger's debts. *See McCarney v. Knudsen*, 342 N.W.2d 380, 386 (N.D. 1983). A moral obligation to repay a loan does not itself give rise to a legal obligation to do so. *McCarney, supra.*

2. First National also asserts that Ramsey National was a holder in due course and, relying upon *Firth v. Farmers-Citizens Bank*, 460 N.E.2d 191 (Ind.Ct.App.1984), contends that "[a] bank as payee of an ordinary check drawn on another bank is considered a holder in due course when the check is used to satisfy an antecedent obligation of the drawer to the payee bank." We have concluded that material issues of fact exist regarding whether the payment discharged an obligation Kunkel owed to Ramsey National. Moreover, whether a party qualifies as a holder in due course is a factual issue. *See Pioneer State Bank v. Johnsrud*, 284 N.W.2d 292, 296 (N.D.1979).