KEITH D. DUNNIGAN, TRUSTEE *v.* FIRST BANK
(13883)

SHEA, CALLAHAN, GLASS, HULL and BORDEN, Js.

Argued November 2, 1990—decision released January 22, 1991

*Ben A. Solnit,* with whom was *Richard W. Bower-man,* for the appellant (defendant).

*Michael S. Lynch,* for the appellee (plaintiff).

BORDEN, J. In this appeal, we are called upon to define the meaning and scope of General Statutes § 42a-4-403 (3)[1] of the Uniform Commercial Code (code) as applied to the facts of this case. The defendant bank appeals, after a court trial, from the judgment of the trial court in favor of the plaintiff, the trustee in bankruptcy of Cohn Precious Metals, Inc. (Cohn), a customer of the bank. We transferred the appeal to this court pursuant to Practice Book § 4023, and we now reverse the trial court's judgment.

The plaintiff brought this action against the bank for wrongfully paying a check issued by Cohn over Cohn's valid stop payment order. The trial court determined that the plaintiff had established a loss within the meaning of § 42a-4-403 (3) as a result of the bank's payment of the check, and that the subrogation provisions of General Statutes § 42a-4-407[2] did not defeat the rights of Cohn. The court accordingly rendered judgment for the amount of the check. This appeal followed.

---

[1] General Statutes § 42a-4-403 provides as follows: "CUSTOMER'S RIGHT TO STOP PAYMENT; BURDEN OF PROOF OF LOSS. (1) A customer may by order to his bank stop payment of any item payable for his account but the order must be received at such time and in such manner as to afford the bank a reasonable opportunity to act on it prior to any action by the bank with respect to the item described in section 42a-4-303.

"(2) An oral order is binding upon the bank only for fourteen calendar days unless confirmed in writing within that period. A written order is effective for only six months unless renewed in writing.

"(3) The burden of establishing the fact and amount of loss resulting from the payment of an item contrary to a binding stop payment order is on the customer."

[2] General Statutes § 42a-4-407 provides as follows: "PAYOR BANK'S RIGHT TO SUBROGATION ON IMPROPER PAYMENT. If a payor bank has paid an item over the stop payment order of the drawer or maker or otherwise under circumstances giving a basis for objection by the drawer or maker, to pre-

The bank claims that judgment was improperly rendered for the plaintiff because (1) as a matter of law, Cohn did not suffer a loss within the meaning of § 42a-4-403 (3), and (2) the bank was subrogated to the rights of the payee of the check and of the collecting banks, pursuant to § 42a-4-407. We agree with the bank's first claim and therefore need not reach its second claim. Furthermore, it is not necessary to define the relationship between §§ 42a-4-403 (3) and 42a-4-407.

The parties stipulated to the following facts. On November 8, 1978, pursuant to purchase order 1142, Lamphere Coin, Inc. (Lamphere), a trader in coins and precious metals, delivered to Cohn certain silver dollars with a unit price of $1.71 and with a total value of $27,492.07. Cohn's bookkeeper incorrectly recorded the unit price of those coins, however, as $17.10, resulting in an erroneous total value of $47,098.93. On November 9, 1978, Cohn paid Lamphere $47,098.93 by wire transfer to Lamphere's bank account, resulting in an overpayment to Lamphere by Cohn of $19,606.86. On November 10, 1978, Lamphere delivered three and one-half bags of silver dollars to Cohn pursuant to Cohn's purchase order 1145. The value of the silver dollars was $21,175. On the same day, Cohn issued two checks drawn on its account at the bank to Lamphere, one in the amount of $12,175 and one in the amount of $9000, totaling $21,175.

Between November 10 and November 15, Cohn discovered its bookkeeper's error and, on November 14,

---

vent unjust enrichment and only to the extent necessary to prevent loss to the bank by reason of its payment of the item, the payor bank shall be subrogated to the rights (a) of any holder in due course on the item against the drawer or maker; and (b) of the payee or any other holder of the item against the drawer or maker either on the item or under the transaction out of which the item arose; and (c) of the drawer or maker against the payee or any other holder of the item with respect to the transaction out of which the item arose."

1978, directed the bank to stop payment on the two checks totaling $21,175 that had been issued on November 10, 1978. The bank stopped payment on the $9000 check, but on or about November 20, 1978, the bank inadvertently honored the $12,175 check over the valid stop payment order. Cohn retained the three and one-half bags of silver dollars, but never recovered its overpayment from Lamphere. As of November 20, 1978, the date of the improper payment of the check by the bank, and at all times thereafter Lamphere owed Cohn in excess of $13,000 as a result of these transactions.

The merits of this controversy revolve around the meaning of § 42a-4-403 (3), which provides that "[t]he burden of establishing the fact and amount of loss resulting from the payment of an item contrary to a binding stop payment order is on the customer." The bank argues that where there is good consideration for a particular check, or where the check was given as payment on a binding contract, the bank that paid the check over a valid stop payment order is not liable to its customer, because there was no "loss resulting from [its] payment . . . ." General Statutes § 42a-4-403 (3). Thus, in the bank's view a customer cannot establish a loss under this provision of the code by relying on the loss of credits due the customer from prior unrelated transactions between the customer and the payee of the check. The plaintiff argues, as the trial court concluded, that whether a customer has incurred a "loss" within the meaning of § 42a-4-403 (3) cannot be determined solely by focusing on the transaction underlying the particular check involved, but must be determined by focusing on the entire relationship between the customer and the payee of the check. The plaintiff contends that it is unreasonable to disregard the relative positions of the parties, especially where they have demonstrated a continuing course of business dealings,

where there are likely to be such credits. Under such circumstances, the plaintiff claims that focusing on a single transaction is contrary to the intent of the code. Thus, in the plaintiff's view, Cohn would have had a good "defense" to a claim by Lamphere on the check because of the overpayment, and by paying the check the bank caused Cohn a loss within the meaning of § 42a-4-403 (3).

The issue, therefore, is whether, on the facts of this case, the bank customer who sought to establish "the fact and amount of loss resulting from the payment of an item contrary to a binding stop payment order" pursuant to § 42a-4-403 (3) was entitled to do so by resorting to credits from prior transactions unrelated to that for which the check was issued, or whether the customer was limited to the facts of the particular transaction for which the check was issued. We conclude that the customer was limited to the facts of the particular transaction for which the check was issued, and that § 42a-4-403 (3) does not contemplate taking into account a loss by the customer of credits that arose from prior unrelated transactions.

We note first that, contrary to the plaintiff's suggestion, there is nothing in the stipulated facts to indicate that Cohn and Lamphere had a "continual course of business dealings." Those facts disclose only the two separate transactions occurring on November 8 and 9, 1978, and on November 10, 1978. Furthermore, this is not a case involving a revolving credit, open account or ongoing contractual relationship between the customer of the bank and the payee of the check. Thus, we need not decide whether those facts would yield a different conclusion.

Under § 42a-4-403 (1), a bank customer has the right to order his bank to stop payment on a check, so long as he does so in a timely and reasonable manner, and,

under § 42a-4-403 (2), an oral stop payment order is binding on the bank for a limited period of time. See footnote 1, supra. The fact that the bank has paid the check over the customer's valid stop payment order does not mean, however, that the customer is automatically entitled to repayment of the amount of the check. Under § 42a-4-403 (3), the customer must also establish "the fact and amount of loss resulting from" the bank's improper payment.

The case law makes clear that "[t]he loss . . . must be more than the mere debiting of his account." *Grego* v. *South Carolina National Bank,* 283 S.C. 546, 549, 324 S.E.2d 94 (1984); accord *Kunkel* v. *First National Bank of Devils Lake,* 393 N.W.2d 265 (N.D. 1986), and cases cited therein; see also *Delano* v. *Putnam Trust Co.,* 33 UCC Reporting Service 635 (Conn. Superior Ct. 1981); *Southeast First National Bank of Satellite Beach* v. *Atlantic Telec, Inc.,* 389 So. 2d 1032 (Fla. App. 1980); *Siegel* v. *New England Merchants National Bank,* 386 Mass. 672, 437 N.E.2d 218 (1982); *Best* v. *Dreyfus Liquid Assets, Inc.,* 215 N.J. Super. 76, 521 A.2d 352 (1987); *Cicci* v. *Lincoln National Bank,* 46 Misc. 2d 465, 260 N.Y.S. 100 (1965); *Fisher* v. *Bankers Trust Co.,* 14 UCC Reporting Service 466 (N.Y. App. Term. 1974); *Mitchell* v. *Republic Bank & Trust Co.,* 35 N.C. App. 101, 239 S.E.2d 867 (1978). The commentators agree. See W. Hillman, Basic UCC Skills 1989, Article 3 and Article 4, p. 302; E. Peters, A Negotiable Instruments Primer (1974) p. 79; 1 J. White & R. Summers, Uniform Commercial Code (3d Ed. 1988) § 18-6, pp. 909–10. Otherwise, § 42a-4-403 (3) would be superfluous. Furthermore, whether the customer has suffered such a loss is in the first instance a question of fact. *Best* v. *Dreyfus Liquid Assets, Inc.,* supra, 81; *Kunkel* v. *First National Bank of Devils Lake,* supra, 268; *Grego* v. *South Carolina National Bank,* supra.

The cases and commentators also agree that where the check in question was supported by good consideration, or where the payee has enforceable rights against the maker based on the transaction underlying the check, the customer has suffered no loss within the meaning of § 42a-4-403 (3). *Siegel* v. *New England Merchants National Bank,* supra, 678–79; *Pokras* v. *National Bank of North America,* 30 UCC Reporting Service 1089–90 (N.Y. App. Term. 1981); *Fisher* v. *Bankers Trust Co.,* supra, 467; *Kunkel* v. *First National Bank of Devils Lake,* supra; W. Hillman, supra; E. Peters, supra; 1 J. White & R. Summers, supra. As then Professor Peters explained, it "is implicit in § 4-403 (3) that if a check was issued for good consideration . . . failure to observe a stop payment order does no more than to accelerate the drawer's inevitable liability, and is therefore a defense to the payor bank." E. Peters, supra.

Applying these principles to the facts of this case, we conclude that as a matter of law Cohn suffered no "loss" within the meaning of § 42a-4-403 (3). The check was supported by good consideration because it was issued in payment for the silver coins that Lamphere delivered to Cohn. Furthermore, on the basis of that underlying transaction Lamphere had enforceable rights to payment by Cohn for those coins.

The plaintiff argues, however, that, although the particular check was supported by valid consideration and although there were no defenses available to it arising out of that particular transaction, the previous transaction between Cohn and Lamphere had supplied Cohn with a defense to payment of the check based on Cohn's overpayment to Lamphere. We disagree.

First, the language of § 42a-4-403 (3) suggests a narrower reading than would be required by the plaintiff's

position.[3] Section 42a-4-403 (3) places on the bank's customer the "burden of establishing the *fact and amount of loss resulting from the payment* of an item contrary to a binding stop payment order . . . ." (Emphasis added.) By contrast, General Statutes § 42a-4-402, which deals with a bank's liability to its customer for a wrongful *dishonor,* as opposed to a wrongful payment, provides as follows: "A payor bank is liable to its customer for *damages proximately caused by the wrongful dishonor* of an item. When the dishonor occurs through mistake liability is limited to actual damages proved. If so proximately caused and proved damages may include damages for an arrest or prosecution of the customer or other consequential damages. Whether any consequential damages are proximately caused by the wrongful dishonor is a question of fact to be determined in each case." (Emphasis added.) Thus, pursuant to § 42a-4-402 the wrongfully dishonoring bank may be liable for all consequential damages proximately caused by its wrongful conduct, including damages resulting from arrest or prosecution of the customer, whereas there is a conspicuous absence from § 42a-4-403 (3) of language indicating such a broad scope of liability for wrongful payment.

This difference in the scope of the language used in § 42a-4-403 (3), as compared to that used in § 42a-4-402, is consistent with the notion that § 42a-4-403 (3) is intended to impose a limited, rather than broad, form

---

[3] Ordinarily we would look to the official commentary to the code for guidance in interpreting its language. Comment 2 to Connecticut General Statutes Annotated § 42a-4-403 provides: "The position taken by this section is that stopping payment is a service which depositors expect and are entitled to receive from banks notwithstanding its difficulty, inconvenience and expense. The inevitable occasional losses through failure to stop should be borne by the banks as a cost of the business of banking." This comment does not help in the resolution of the issue in this case, however, because it does not address the question of how to measure the scope of those "occasional losses through failure to stop."

of liability on banks. "The trade-off for requiring banks to accept stop orders under § 4-403 (1) was the limitation of their liability under §§ 4-403 (3) and 4-407." E. Peters, supra, p. 79.

The case law and commentary support this more restrictive view of the scope of § 42a-4-403 (3). In determining whether a customer has established a "loss" under this section of the code, they focus on the check itself and on the transaction underlying it, and not on whether there were other prior, unrelated transactions between the maker and payee of the check. "In order to prove a loss under [§ 42a-4-403 (3) of] the Code, a customer must prove he was not liable to the payee *on the check*. White & Summers, Uniform Commercial Code 560 (2d ed. 1980); Brady, Brady on Bank Checks § 20.20 p. 20-45 (5th ed. 1979); 6 Reitman & Weisblatt, Banking Law § 133.-07(2) (Bender's Banking Law Service 1981)." (Emphasis added.) *Bryan* v. *Citizens National Bank In Abilene,* 628 S.W.2d 761, 763 (Tex. 1982); see also *Siegel* v. *New England Merchants National Bank,* supra; *Kunkel* v. *First National Bank of Devils Lake,* supra; W. Hillman, supra; E. Peters, supra; 1 J. White & R. Summers, supra. Although Cohn had an offset or counterclaim available to it with respect to Lamphere, it did not have a defense to payment of the check itself.

Finally, we find guidance in *Siegel* v. *New England Merchants National Bank,* supra. In that case, the court held that § 42a-4-403 (3) must be read together with the subrogation provisions of § 42a-4-407. Id., 678. Although we need not go that far because on the facts of this case § 42a-4-403 (3) can be read independently of § 42a-4-407, we are persuaded by the holding of *Siegel* that in order to establish a § 42a-4-403 (3) "loss" the customer must show that he had defenses to payment of the check that were good against a holder or

holder in due course under General Statutes §§ 42a-3-305 and 42a-3-306,[4] as the case may be, or that he had a good defense to liability on the underlying transaction. Id., 679. None of these defenses arise from facts outside the confines of the particular check in question or the transaction underlying it.

In this case, the plaintiff seeks more than to establish a loss caused by the bank's failure to honor Cohn's stop payment order. That "loss" occurred in fact on November 9, 1978, when Cohn overpaid for the coins it had received. Rather, the plaintiff seeks to recoup a loss resulting from a prior transaction separate from and independent of the stopped check. Thus, the plaintiff's position would permit the customer to establish a "loss" based on offsets or counterclaims against the payee based on prior unrelated transactions, no matter how remote from the check in question or from the

[4] General Statutes §§ 42a-3-305 and 42a-3-306 provide as follows: "Sec. 42a-3-305. RIGHTS OF A HOLDER IN DUE COURSE. To the extent that a holder is a holder in due course he takes the instrument free from (1) all claims to it on the part of any person; and (2) all defenses of any party to the instrument with whom the holder has not dealt except (a) infancy, to the extent that it is a defense to a simple contract; and (b) such other incapacity, or duress, or illegality of the transaction, as renders the obligation of the party a nullity; and (c) such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms; and (d) discharge in insolvency proceedings; and (e) any other discharge of which the holder has notice when he takes the instrument.

"Sec. 42a-3-306. RIGHTS OF ONE NOT HOLDER IN DUE COURSE. Unless he has the rights of a holder in due course any person takes the instrument subject to (a) all valid claims to it on the part of any person; and (b) all defenses of any party which would be available in an action on a simple contract; and (c) the defenses of want or failure of consideration, nonperformance of any condition precedent, nondelivery, or delivery for a special purpose; and (d) the defense that he or a person through whom he holds the instrument acquired it by theft, or that payment or satisfaction to such holder would be inconsistent with the terms of a restrictive endorsement. The claim of any third person to the instrument is not otherwise available as a defense to any party liable thereon unless the third person himself defends the action for such party."

transaction underlying it. We do not believe that the intent of § 42a-4-403 (3) ranges that far.

The dissent reads the commentary of Peters and of White and Summers too broadly. Although both refer to the situation, unlike the case at bar, where a customer seeks to establish a loss resulting from the dishonor of subsequent checks, neither commentator states with any confidence that the customer would prevail under § 42a-4-403 (3). Peters discusses the hypothetical without coming to any conclusion other than "[w]hatever the inferences that may appropriately be drawn . . . it can hardly alter the conviction that § 4-403 (3) accomplishes its purpose of severely limiting a drawer's power to stop payment." E. Peters, supra, p. 80. White and Summers do venture that they would find the bank liable, but "confess uncertainty about this conclusion, for it leaves little substance to § 4-403 (3)." 1 J. White & R. Summers, supra, p. 912. In any event, that is a case where the purported "loss" *follows* the wrongful payment and thus could arguably be said to be the result thereof, and not, as in this case, where it *precedes* that payment. Furthermore, the dissent's equation of § 42a-4-403 (3) to the law of causation in negligence ignores the difference in statutory language between § 42a-4-402, where that concept is incorporated, and § 42a-4-403 (3), where such language is absent.

A factual finding must be reversed as clearly erroneous if it was based on an incorrect rule of law. *Hydro-Hercules Corporation* v. *Gary Excavating, Inc.,* 166 Conn. 647, 654, 353 A.2d 714 (1974). The trial court's finding in this case that the plaintiff had established a loss within the meaning of § 42a-4-403 (3) was so based.

The judgment is reversed and the case is remanded with direction to render judgment for the defendant.

In this opinion CALLAHAN and HULL, Js., concurred.

SHEA, J., with whom GLASS, J., joins, dissenting. In this case it is undisputed that the drawer, Cohn Precious Metals, Inc. (Cohn), complied fully with General Statutes § 42a-4-403 (1) in stopping payment on the checks it had delivered to Lamphere Coin, Inc. (Lamphere), on November 10, 1978, while unaware of the overpayment of $19,606.86 on November 9, 1978. It is also clear that, but for the negligence of the bank in paying the $12,175 check contrary to the stop payment order, Cohn could have offset its overpayment of the previous day against the value of the coins received from Lamphere on November 10, 1978. Thus, as the trial court concluded, the plaintiff trustee, on behalf of Cohn, sustained his "burden of establishing the fact and amount of loss resulting from the payment of an item contrary to a binding stop payment order" by the defendant bank, as § 42a-4-403 (3) requires.[1]

The majority opinion does not challenge, as unsupported by the evidence, the trial court's factual finding that Cohn suffered a loss resulting from the bank's negligent payment of the $12,175 check to Lamphere, but rejects this straightforward "but for" causation analysis in favor of a narrower view of the "resulting from the payment" provision of § 42a-4-403 (3). The majority would restrict a bank's liability for paying a check contrary to a stop order to losses arising from

---

[1] On the basis of the facts before us, the trial court's award of $12,175 damages may have been excessive. The amount of the overpayment of November 9, 1978, was $19,606.86. The value of the silver dollars received by Cohn on November 10, 1978 was $21,175. Before the two checks totaling $21,175 were issued for this purchase, Cohn owed Lamphere $1568.14. That debt was discharged by the bank's erroneous payment of the $12,175 check. Thus Cohn received good consideration of $1568.14 as a result of the bank's payment and its loss is limited to the balance of the amount paid on the $12,175 check, $10,606.86.

The defendant bank has not challenged the amount of the award and, since it has fully prevailed on appeal, it is unnecessary to consider the issue further.

the transaction in which the check was issued, such as a failure of consideration. I disagree, because there is nothing in the text of § 42a-4-403 (3) or its history to support such an unjustifiable curtailment of the right of the drawer recognized by § 42a-4-403 (3) to stop payment on a check for any reason, so long as the order is given to the bank in a timely and reasonable manner, as in this case. The right, of course, would be illusory without recourse against the negligent bank.

"The right to stop payment is an established right that was recognized prior to the Code. The right is absolute." J. Reitman et al., 6 Banking Law § 133.02. "If the drawer has a good defense on a check against a payee or holder, then the drawer suffers a loss when the bank wrongfully pays the check over a stop payment order." Id. The plaintiff trustee had the burden of proving that Cohn's loss resulted from noncompliance with the stop payment order, just as any negligence victim must prove causation. Even if the standard of causation applicable to breaches of contract should govern reasonable foreseeability of the damages at the time the drawer and bank enter into this relationship; *Neiditz* v. *Morton S. Fine & Associates, Inc.*, 199 Conn. 683, 689 n.3, 508 A.2d 438 (1986); 3 Restatement (Second), Contracts § 351 (1); it is evident that a bank must be deemed to foresee that its payment of a check over a valid stop payment order is likely to cause a loss to the drawer in the amount of the payment. There is nothing in § 42a-4-403 (3) that warrants a narrower approach to the issue of causation than that applicable to breaches of contract. In order to prevail against a bank that has ignored a stop payment order, "[t]he customer must show that (i) the account was debited, (ii) some other loss was suffered, if applicable, and (iii) bank's noncompliance with the stop order was the 'but for' cause." W. Hillman, Basic UCC Skills

1989, Article 3 and Article 4, p. 319. As the trial court found, those criteria were satisfied by the plaintiff trustee in this case.

In adopting its constricted view of the "loss resulting from the payment of an item contrary to a binding stop payment order" provision of § 42a-4-403 (3), the majority cites a plethora of authorities, none of which address the issue of whether a bank is excused from liability for failing to obey a stop payment order simply because the drawer had no defense arising out of the transaction in which the check was issued but only a right of setoff from another transaction. Most of the cases cited involve the principle that, when a bank has paid a check on which payment has been stopped, it becomes subrogated to the rights of the payee on the check. The quotation relied upon from E. Peters, A Negotiable Instruments Primer (1974) p. 79, it "is implicit in § 4-403 (3) that if a check was issued for good consideration . . . failure to observe a stop payment order does no more than to accelerate the drawer's inevitable liability," is also based on the right of the bank to assert the rights of the payee on the check as a defense to an action by the drawer. Such a defense would not have been effective in this case, however, because the drawer, Cohn, had no such "inevitable liability," given its right to set off the previous overpayment to Lamphere against the bank's claim as subrogee of Lamphere's rights on the check.

Two of the commentators relied upon by the majority refer to the situation in which a bank has wrongfully debited a customer's account after a stop payment order and this action has resulted in dishonoring for insufficient funds subsequent checks issued by the drawer with the consequence of impairing his credit. E. Peters, supra; 1 J. White & R. Summers, Uniform

Commercial Code (3d Ed. 1988) p. 912. Although they disagree as to how this problem should be resolved under § 42a-4-403 (3), they implicitly recognize that the bank's liability for failing to obey a stop payment order may well subject it to liability with respect to other transactions resulting in damages to a drawer that have been caused by the bank's oversight. The narrow concept of causation adopted by the majority cannot be reconciled with the views of these commentators.

The majority stresses the difference between the "resulting from" causation language of § 42a-4-403 (3) and the more elaborate provision of General Statutes § 42a-4-402 that expressly makes the bank liable for consequential damages for wrongfully dishonoring a check, including such damages as may result from the arrest or prosecution of the customer. Such a provision in § 42a-4-402 is probably necessary if liability for such damages is to be imposed because of the contract law limitation of damages to those that are reasonably foreseeable at the time of the contract. 3 Restatement (Second), Contracts § 351 (1). Such a provision in § 42a-4-403 (3) is unnecessary to make a bank liable for the amount of a check it has paid after a stop payment order, however, because it is obvious that such a loss to the drawer from the bank's oversight is readily foreseeable.

As the majority acknowledges in a footnote, the official commentary in § 42a-4-403 takes the position "that stopping payment is a service which depositors expect and are entitled to receive from banks notwithstanding its difficulty, inconvenience and expense" and that "[t]he inevitable occasional losses through failure to stop should be borne by the banks as a cost of the business of banking." The view of the majority that a drawer should be made to bear a loss that would have been avoided but for the bank's neglect, because it did

not arise from the transaction in which the check was issued, places a substantial restriction on the right to stop payment that § 42a-4-403 (1) purports to give.

With respect to General Statutes § 42a-4-407 and the defendant's claim to be a holder in due course, there is nothing in the record to indicate that the collecting bank ever allowed the payee to draw on the check after it was deposited. Since there is no proof that the collecting bank gave value, the defendant's claim to be subrogated to the status of a holder in due course is without foundation.

Accordingly, I dissent.